**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HENRY ESPEJO, | Case No.: 1:11-cv-08987 |
| *Plaintiff*, | Honorable Charles P. Kocoras |
| *v.* | Magistrate Judge Sidney I. Schenkier |
| SANTANDER CONSUMER USA, INC., an Illinois corporation, | |
| *Defendant*. | |
| FAYE LEVINS, individually and on behalf of all others similarly situated, | Case No.: 1:12-cv-09431 |
| *Plaintiff*, | Honorable Charles P. Kocoras |
| *v.* | Magistrate Judge Sidney I. Schenkier |
| SANTANDER CONSUMER USA, INC., an Illinois corporation, | |
| *Defendant*. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT SANTANDER
CONSUMER USA, INC.'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION .......................................................................................................... 1

      A.     Santander Autodialed Faye Levins' -6074 and -9678 Numbers Without Obtaining Her Prior Express Consent. ....................................................................................... 3

            *1.*     *Santander Placed 19 Calls to the -6074 Number Without Consent.* ........... 3

            *2.*     *Santander Placed Four Calls to the -9678 Number Without Consent.* ........ 3

      B.     Santander Autodialed Henry Espejo's -1411 Number Without Obtaining His Prior Express Consent. ....................................................................................................... 4

      C.     Santander Used the Aspect Dialer to Place Thousands of Calls Simultaneously and Without Human Intervention to Plaintiffs Levins and Espejo, as well as the Proposed Classes. .................................................................................................... 5

III.     ARGUMENT .................................................................................................................. 6

      A.     Santander Has Failed to Establish that Levins and Espejo Consented to Receive Calls on Their Cellular Telephones. ...................................................................... 6

            *1.*     *Levins Did Not Consent to Be Called on Her -6074 Number Prior to Santander Calling that Number.* ............................................................. 7

            *2.*     *Levins Did Not Consent to be Called on Her -9678 Number Prior to Santander Calling that Number Either.* ..................................................... 9

            *3.*     *Henry Espejo Did Not Consent to Be Called on His -1411 Prior to Santander Calling that Number.* ........................................................... 10

      B.     Aspect Falls Squarely Within the Established Definition of an ATDS. ............... 11

            *1.*     *Aspect is an ATDS because it is a predictive dialer that places calls without human intervention.* ................................................................. 12

            *2.*     *The argument that Aspect "does not employ a random or sequential number generator" is irrelevant.* ............................................................. 14

IV.     CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................6

**United States Circuit Court of Appeals Cases**

*CE Design, Ltd. v. Prism Bus. Media, Inc.*,
606 F.3d 443 (7th Cir. 2010) .............................................................15 n.7

*Costello v. Grundon*,
651 F.3d 614 (7th Cir. 2011) ....................................................................6

*Davis v. Ockomon*,
668 F.3d 473 (7th Cir. 2012) ....................................................................9

*Gerhartz v. Richert*,
779 F.3d 683 (7th Cir. 2015) ..................................................................10

*Harley-Davidson Motor Co. v. PowerSports, Inc.*,
319 F.3d 973 (7th Cir. 2003) ..............................................................9, 11

*McFowler v. Jaimet*,
349 F.3d 436 (7th Cir. 2003) ..................................................................11

*Meyer v. Portfolio Recovery Associates, LLC*,
707 F.3d 1036 (9th Cir. 2012) ...............................................6, 8, 10, 15

*PPM Fin., Inc. v. Norandal USA, Inc.*,
392 F.3d 889 (7th Cir. 2004) ....................................................................9

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ....................................................................7

*Soppet v. Enhanced Recovery Co.*,
679 F.3d 637 (7th Cir. 2012) ..................................................................13

**United States District Court Cases**

*Bd. of Trs. of Teachers' Ret. Sys. of State of Ill. v. Worldcom, Inc.*,
244 F. Supp. 2d 900 (N.D. Ill. 2002) ..................................................15 n.7

*Falchenberg v. New York State Dep't of Educ.*,
642 F. Supp. 2d 156 (S.D.N.Y. 2008) .......................................................9

*Gragg v. Orange Cab Co.*,
  995 F. Supp. 2d 1189 (W.D. Wash. 2014) .................................................................14

*In re Collecto, Inc.*,
  No. 14-MD-02513-RGS, 2016 WL 552459 (D. Mass. Feb. 10, 2016) ...........................14

*Johnson v. Yahoo!, Inc.*,
  No. 14 CV 2028, 2014 WL 7005102 (N.D. Ill. Dec. 11, 2014) ....................................13

*Lardner v. Diversified Consultants Inc.*,
  17 F. Supp. 3d 1215 (S.D. Fla. 2014) .......................................................................15

*Lynn v. Monarch Recovery Mgmt., Inc.*,
  No. 11-cv-2824, 2013 WL 1247815 (D. Md. Mar. 25, 2013) ...................................12 n.6

*Modica v. Green Tree Servicing, LLC*,
  No. 14 C 3308, 2015 WL 1943222 (N.D. Ill. Apr. 29, 2015) ...........................................7

*Molnar v. NCO Fin. Sys., Inc.*,
  No. 13-CV-00131-BAS JLB, 2015 WL 1906346 (S.D. Cal. Apr. 20, 2015) .............11 n.6

*Moore v. Dish Network LLC*,
  57 F. Supp. 3d 639 (N.D.W. Va. 2014) .......................................................................14

*Nelson v. Santander Consumer USA, Inc.*,
  931 F. Supp. 2d 919 (W.D. Wis. 2013) .................................................................11 n.6, 15

*Robinson v. Green Tree Servicing, LLC*,
  No. 13 CV 6717, 2015 WL 4038485 (N.D. Ill. June 26, 2015) .....................................11

*Ruff v. Partner's Liquidating Tr.*,
  No. 00 C 7337, 2001 WL 893820 (N.D. Ill. Aug. 8, 2001)...............................................8

*Schumacher v. Credit Prot. Ass'n*,
  No. 4:13-CV-00164-SEB, 2015 WL 5786139 (S.D. Ind. Sept. 30, 2015) .................12, 14

*Sherman v. Yahoo! Inc.*,
  No. 13CV0041-GPC-WVG, 2015 WL 8757028 (S.D. Cal. Dec. 14, 2015) ...................13

*Smith v. Markone Fin., LLC*,
  No. 3:13-CV-933-J-32MCR, 2015 WL 419005 (M.D. Fla. Feb. 2, 2015)......................14

*Thrasher-Lyon v. Illinois Farmers Ins. Co.*,
  861 F. Supp. 2d 898 (N.D. Ill. 2012) .......................................................................6, 7

*Wilcox v. Green Tree Servicing, LLC*,
    No. 8:14-CV-1681-T-24, 2015 WL 2092671 (M.D. Fla. May 5, 2015) ....................12 n.6

*Zeidel v. YM LLC USA*,
    No. 13-CV-6989, 2015 WL 1910456 (N.D. Ill. Apr. 27, 2015)........................................7

## Statutes, Rules, and Regulations

28 U.S.C. § 2342 ...................................................................................................................12

47 U.S.C. § 227 ........................................................................................................6, 11, 12

Fed. R. Civ. P. 56 ..................................................................................................................6

## Other Authorities

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    30 F.C.C. Rcd. 7961 (July 10, 2015) ...............................................................7, 12, 13, 15

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    23 F.C.C. Rcd,. 559 (Jan. 4, 2008)...................................................................6, 7, 10, 12

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    18 F.C.C. Rcd. 14014 (July 3, 2003) ...............................................................................12

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ...................................................................................7

## I.  INTRODUCTION

The goal of Defendant Santander Consumer USA Inc.'s ("Defendant" or "Santander") motion for individual summary judgment is not to secure a judgment on the individual claims in this case. If that were true, it would have filed the motion long ago and avoided what has been years of protracted litigation, otherwise needless class and expert discovery, and briefing on class certification. Instead, Santander hopes to muddy the waters on Plaintiff Faye Levins' pending request for class certification by suggesting that individual issues with her (and Plaintiff Henry Espejo's) claims exist such that certification is inappropriate. That suspect timing aside, the record shows that Santander's two primary arguments in support of summary judgment—(i) that both Plaintiffs consented to receive the calls, and (ii) that its Aspect dialing system falls outside the TCPA's definition of an automatic telephone dialing system ("ATDS")—completely miss their mark. At the very least, it's clear there are disputed issues of material fact as to the evidence upon which those arguments are based.

First, with respect to the calls it placed to Levins' -6074 number, Santander argues that the phrase "IVR1's Home" in its call logs denotes consent. But that assertion is based solely upon the speculation of a 30(b)(6) witness who was not designated to address the topic and who, in any event, testified that it was not clear from the logs alone that "IVR1's Home" was indicative of consent. By contrast, Santander's records *do conclusively show* that: (i) it placed scores of calls to Levins at her -6074 number; (ii) Levins did not voluntarily provide the number to Santander—it was "trapped"[1] during an inbound call; and (iii) 19 of those calls were made prior to the number being "verified"—i.e., before Santander asked whether, and Levins

---

[1]  "Number trapping" refers to the process through which Santander captures new telephone numbers during inbound phone calls, then adds those numbers to an account as a new method of contact.

confirmed that, the number was one at which she could be reached.[2] On that record, the idea that Levins consented to be called at her -6074 number is far from undisputed.[3]

Santander's arguments with respect to the calls it placed to Espejo's -1411 number meet a similar fate. Rather than present indisputable evidence of consent, Santander relies exclusively on mischaracterizations of Espejo's deposition testimony to claim that he consented to be called during a conversation with one of its call center agents. In reality, Espejo's testimony shows that he simply confirmed that the -1411 number was his, but requested that Santander not call him.[4]

Finally, Santander's contention that its Aspect dialing system requires a level of "human intervention" to operate such that it falls outside the statutory definition of an ATDS is equally dubious. For one, courts throughout the country have consistently held that the types of human activities Santander points to—i.e., loading into the system computer-generated list of numbers to call and call center agents logging into their workstations before the system automatically routes calls to them—*do not* rise to the level of "human intervention" contemplated by the TCPA. Not surprisingly, other courts have considered similar arguments with respect to the Aspect dialing system and found that it fits neatly into the definition of an ATDS, and Santander has stipulated to that fact in other matters. Ultimately, Santander's argument that Aspect should not be considered an ATDS is nonsensical.

For these reasons and as explained further below, Santander's motion for summary judgment should be denied in its entirety.

---

[2] Notably, the only calls upon which Levins bases her request for class certification are those made to her -6074 number. Like each member of the proposed classes, Santander's records show that she received 19 calls on that number prior to her "verifying" it as a number at which she could be reached, and each were made using the same Aspect dialing system.

[3] Similarly, although Santander seeks judgment with respect to the calls it made to Levins' -9678 number, Santander *admits* that it placed at least four calls to that number before obtaining consent.

[4] As far as Santander's attempts to undermine class certification are concerned, Espejo's claims have no bearing whatsoever—he falls outside the proposed class definitions.

## II.    FACTUAL BACKGROUND

### A.    Santander Autodialed Faye Levins' -6074 and -9678 Numbers Without Obtaining Her Prior Express Consent.

Plaintiff Levins is a borrower who took out an auto loan subject to an interest rate of 24.99% from Drive Financial Services, which subsequently merged with Santander. (Def.'s SOF ¶¶ 31–33; Pls.' Stmt. of Addt'l Facts ("Pls.' SOF") ¶ 1.) Like many subprime borrowers subject to high interest rates, Levins soon fell behind on her loan payments. (*See* Def.'s SOF ¶ 34.) Health problems and thyroid surgery, necessitating time off from her job as a customer service agent, compounded Levins' difficulties keeping current on her loan payments. (Pls.' SOF ¶ 2.)

#### *1.    Santander Placed 19 Calls to the -6074 Number Without Consent.*

On March 27, 2009, a few months after taking out her loan, Levins called Santander from her cellular telephone number ending in -6074 for the first time. (Pls.' SOF ¶ 3.) Santander's internal activity notes for that call show that a Santander agent designated the -6074 number as "IVR1's Home" and that "no verifications" were required. (*Id.*) ███████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
████████████████████████ Santander asserts that the word "verifications" in its records denotes that a consumer has confirmed his or her phone number as an appropriate method of contact. (*Id.* ¶ 5.) In the five-month period following her initial call to Santander, Levins received 19 calls from Santander on the -6074 number without any "verification" having taken place. (*Id.* ¶ 6.) Not until August 12, 2009 do the activity notes finally indicate that "verifications were required for Faye Levins and were completed." (*Id.* ¶ 7.) In other words, at a minimum, 19 calls were placed to Levins' -6074 number without her consent.

#### *2.    Santander Placed Four Calls to the -9678 Number Without Consent.*

On May 4, 2012, Santander placed its first phone call to Levins' cellular telephone number ending -9678, which it called again on May 7 and May 10, 2012. (*Id.* ¶ 8.) The activity notes for these three calls do not indicate that this number was marked "IVR's Home" or that any "verifications" were performed either. (*Id.*) To the contrary, Santander's agent recorded that on May 7, 2012, Levins wanted the calls to stop and that on May 10, 2012, she "kept hollering" and ultimately hung up on the call. (*Id.*) Not until Santander called again on May 14, 2012 did Levins identify the -9678 number as a number at which she could be contacted. (Def.'s SOF ¶ 38.)

**B.  Santander Autodialed Henry Espejo's -1411 Number Without Obtaining His Prior Express Consent.**

Maria Espejo—Henry Espejo's wife—is also a borrower. She took out an auto loan subject to an interest rate of 8.33% from Sovereign Bank, for which Santander subsequently became the third-party servicer. (Def.'s SOF ¶¶ 6–7; Pls.' SOF ¶ 9.) Like Levins, Maria incurred medical expenses that made it difficult for her to keep current on her loan payments. (*Id.* ¶ 10.)

Plaintiff Henry Espejo, the subscriber for the -1411 number, never authorized his wife to use the -1411 number. (*Id.* ¶ 13.)  On November 4, 2009, Santander received an inbound call from the -1411 number, during which Henry spoke to a Santander agent about Maria's loan for the first time. (*Id.* ¶ 14.) Thereafter, and as Maria fell further behind on her payments, Santander began calling the -1411 number on a regular basis, sometimes multiple times per day. (Pls.' SOF ¶ 15.) Over the next two and a half years, Santander placed literally hundreds of calls to the -1411 number. (*Id.* ¶ 16.)

Though Henry testified that at some point during an unspecified call with Santander, he answered "yes" in response to a Santander agent asking, "Is this a good number for you . . .?" (*Id.* ¶ 17), he did so only to confirm that the -1411 number was his phone number, not to give

Santander permission to call him on it. (*Id.*) In fact, Henry made clear that he never wanted

Santander to call him on the -1411 number, and repeatedly told Santander the same. (*Id.*)

<blockquote>

### C. Santander Used the Aspect Dialer to Place Thousands of Calls Simultaneously and Without Human Intervention to Plaintiffs Levins and Espejo, as well as the Proposed Classes.

</blockquote>

Santander placed all the calls at issue in this lawsuit with what is known as the "Aspect"

dialing system, (Def.'s SOF ¶ 55), ███████████████████████████████

███████████████████████████████ (Pls.' SOF ¶ 18.) It is undisputed that

Santander used the same Aspect hardware and software to place each and every outgoing call.

(Def.'s SOF ¶ 55; Pl.'s SOF ¶ 19.) Aspect allows Santander to dial massive lists of telephone

numbers all at once, without any material human involvement. (Pls.' SOF ¶ 21.) As Santander

explains, these number lists are automatically generated each day in reference to "a multitude of

criteria" such as account balance, days past due, and a risk assessment known as a "behavior

score." (Def.'s SOF ¶ 50.) The lists take the form of an unprocessed ".raw" file. (Pls.' SOF ¶ 22.)

Santander personnel then upload that file to the Aspect system, which extracts and processes the

phone numbers to be dialed. (*Id.*)

As a predictive dialer, Aspect works its way through the automatically generated lists to

dial numbers by the thousands all at once, setting the pace of outbound calls using "an algorithm

to predict when an agent is available to handle the next call," and then "dial[ing] based on these

assumptions." (*Id.* ¶ 23.) As Aspect dials, Santander agents need only log into their workstations

and click buttons to show they are "ready to take a phone call" and "identify them[selves] as

available resources[,]" at which point the calls begin to roll in. (*Id.* ¶¶ 25–26.) No other human

intervention—i.e., actually dialing the numbers or selecting which individual phone numbers will

be called—is necessary for the system to function and the calls to be placed. (*Id.*)

## III.    ARGUMENT

Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the Court construes all facts, and draws all reasonable inferences, in favor of the nonmoving party. *Davis v. Ockomon*, 668 F.3d 473, 477 (7th Cir. 2012). "On summary judgment, a court may not weigh the evidence or decide which inferences should be drawn from the facts. Rather, the court's task is to determine based on the record whether there is a genuine issue of material fact requiring trial." *Costello v. Grundon*, 651 F.3d 614, 636 (7th Cir. 2011) (citations and internal quotations omitted). A genuine issue of material fact is present where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In this case, the Court can easily deny Santander's motion for summary judgment because it has failed to establish (1) that Plaintiffs consented to receive the calls at issue, and (2) that its Aspect dialing system falls outside the TCPA's definition of an ATDS.

### A.    Santander Has Failed to Establish that Levins and Espejo Consented to Receive Calls on Their Cellular Telephones.

Santander has failed to demonstrate that Plaintiffs consented to receive its autodialed debt-collection calls. Under the TCPA, prior express consent is an affirmative defense to liability for which the defendant bears the burden of proof. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (making it unlawful to place calls to cellular telephones using an ATDS without the "prior express consent of the called party."); *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2008 FCC Order"), 23 F.C.C. Rcd. 559, 565 (Jan. 4, 2008). Prior express consent must be given "before the call in question is placed." *Meyer v. Portfolio Recovery Associates, LLC*, 707

F.3d 1036, 1042 (9th Cir. 2012) (citing 2008 FCC Order, 23 F.C.C. Rcd. at 564–65); *accord*

*Zeidel v. YM LLC USA*, No. 13-CV-6989, 2015 WL 1910456, at *2 (N.D. Ill. Apr. 27, 2015).

The TCPA requires prior express consent to be "clearly and unmistakably stated."

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009); *accord Thrasher-Lyon*,

2012 WL 3835089, at *5. Although consent to receive telemarketing calls must be provided in

writing, consent to receive other types of calls may be oral or written. *See In re Rules &*

*Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2015 FCC Order"), 30 F.C.C.

Rcd. 7961, 7968 (July 10, 2015). In the debt-collection context, the provision of a cellular

telephone number in connection with a debt, such as on a credit application, is evidence of "prior

express consent." 2008 FCC Order, 23 F.C.C. Rcd. at 564. Nevertheless, consent does not

automatically lie when, as in this case, a defendant captures a telephone number through a caller

ID system without notice to the caller. *In re Rules & Regulations Implementing the Tel.*

*Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (Oct. 16, 1992); *accord Modica v. Green*

*Tree Servicing, LLC.*, No. 14 C 3308, 2015 WL 1943222, at *4 (N.D. Ill. Apr. 29, 2015).

Here, none of Plaintiffs' three telephone numbers were provided on their credit

applications, and Santander has failed to present any evidence that it obtained the type of "clear

and unmistakable" consent that the TCPA otherwise requires.

1. ***Levins Did Not Consent to Be Called on Her -6074 Number Prior to Santander Calling that Number.***

The record is clear that Santander captured Levins' -6074 number during an inbound

phone call on March 27, 2009 and then placed 19 calls to it before performing any

"verifications." (Pls.' SOF ¶¶ 3, 6, 7.) Nevertheless, Santander halfheartedly contends that

Levins consented to be called on her -6074 number because: (i) Levins provided the -6074

number to Santander at some point, "probably in 2009 or 2010," (ii) Levins subsequently

verified the number to Santander as a valid contact number, (iii) Levins listed the number on MoneyGram and Western Union payments to Santander from May 2010 to January 2011, and (iv) Santander's activity notes list the -6074 number as "IVR1's Home," meaning, according to Santander, that the number must have been designated as a valid contact number. (*See* Def.'s Mem. at 9 (citing Def.'s SOF ¶¶ 40–44).) Not one of these pieces of "evidence" is sufficient for Santander to carry its burden in establishing a consent defense.

First, Levins' statement that she provided her -6074 number "probably in 2009 or 2010," without more, is not the sort of unequivocal evidence upon which summary judgment can be based. *See Ruff v. Partner's Liquidating Tr.*, No. 00 C 7337, 2001 WL 893820, at *5 (N.D. Ill. Aug. 8, 2001) (cautioning that "a consequence of submitting vague and conclusory testimony is that the evidence will be insufficient for prevailing on a summary judgment motion"). And again, that's especially true given that the number was not initially provided *by Levins*, but *trapped by Santander*. (Pls.' SOF ¶¶ 3–4.) Second, despite Santander's argument that Levins' repeatedly "verified" the -6074 number, there is no record of any "verification" during the period from June 20, 2009 to August 12, 2009, in which Levins received 19 calls at the -6074 number. (Pls.' SOF ¶¶ 6–7.) Though the "verification" process appears to be Santander's strongest evidence of consent, (*id.* ¶ 5), it simply did not occur until after Levins already received 19 calls and cannot be applied retroactively. *See Meyer*, 707 F.3d at 1042. For the same reasons, Levins' inclusion of the -6074 number on Western Union and MoneyGram payments from May 2010 to January 2011 does not constitute provision of the requisite *prior* express consent to the 19 calls in question, which were made before those payments ever occurred. (Pls.' SOF ¶¶ 6.)

Santander's final contention—that the -6074 number's designation in its records as "IVR1's Home" proves that Levins verified that number to a call center agent—is without merit.

The record does not support the assertion that the "IVR1's home" designation would "only" appear in the call logs after a verification of that phone number takes place. For one, Santander's records make clear that Levins' -6074 number was not verified by Levins (or anyone else) before being designated as "IVR1's Home." (Pls.' SOF ¶ 3.)[5] Further, the only evidence Santander cites for this proposition comes from the Rule 30(b)(6) deposition of its Colorado site manager, Mark Nerios, who was not designated to testify as to matters of TCPA compliance or consent. (Pls.' SOF ¶ 28.) Indeed, Santander's own attorney objected to the line of questioning that elicited those statements as outside the scope of the deposition. (*Id.*) And perhaps most telling, even Nerios himself testified that there was "no way" from reviewing the activity notes that he could "tell how the conversation went" or whether a verification actually took place at the time the "IVR1's home" designation was recorded. (*Id.*)

Nerios' answers to questions beyond the scope of his deposition notice "will not bind the corporation, but are merely treated as the answers of the individual deponent." *Falchenberg v. New York State Dep't of Educ.*, 642 F. Supp. 2d 156, 164 (S.D.N.Y. 2008) (collecting cases), *aff'd*, 338 F. App'x 11 (2d Cir. 2009); *see also PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 95 (7th Cir. 2004) (noting that 30(b)(6) designee can only testify as to matters within the corporate rubric or for which he or she has personal knowledge). Moreover, given the utter lack of clarity on this issue and the fact that all reasonable inferences must be drawn in Levins' favor, *Davis*, 668 F.3d at 477, summary judgment based upon the "IVR1's home" designation would be improper. *See Harley-Davidson Motor Co. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) ("[T]he choice between reasonable inferences from facts is a function of the fact-finder").

### 2.     *Levins Did Not Consent to be Called on Her -9678 Number Prior to Santander Calling that Number Either.*

---

[5]     The verification of that number did not take place until August 12, 2009, and only after the 19 calls at issue were already made to the number. (Pls.' SOF ¶¶ 6–7.)

9

As to Levins' -9678 number, the record shows that Santander placed three calls to the number—on May 4, 7, and 10, 2012—before obtaining Levins' consent in a fourth call on May 14, 2012. (Pls.' SOF ¶ 8; Def.'s SOF ¶ 38.) Santander does not indicate how it obtained this cellular telephone number, but argues that Levins' May 14, 2012 authorization acts as a complete shield to liability for any calls made to the -9678 number prior to that date. (Def.'s Mem. at 9.) "Prior express consent," however, is *only* a defense to a TCPA claim when given "before the call in question is placed." *Meyer*, 707 F.3d at 1042. Thus, by Santander's own admission, it lacked *prior* express consent to place the May 4, 7, 10, and 14 calls to the -9678 number. Accordingly, because Santander had the burden of establishing prior express consent, *see* 2008 FCC Order, 23 F.C.C. Rcd. at 565, it "fails to discharge [its] burden" of production, and therefore "is not entitled to summary judgment." *Gerhartz v. Richert*, 779 F.3d 683, 686 (7th Cir. 2015).

### 3. Henry Espejo Did Not Consent to Be Called on His -1411 Prior to Santander Calling that Number.

Finally, as to the calls placed to Plaintiff Henry Espejo's -1411 number, the record is devoid of any evidence that consent was ever "clearly and unmistakably stated." Relying exclusively on Henry Espejo's vague testimony, Santander argues that consent was provided on November 4, 2009. (*See* Def.'s Mem. at 9.) But that deposition testimony is inconclusive at best.

Specifically, Santander focuses on seven lines in which Mr. Espejo recounted that, on some unknown date, during some unknown call, he answered "yes" to Santander's question, "Is this a good number for you . . .?" (Pls.' SOF ¶ 17.) Not only is it unclear when this conversation occurred, Mr. Espejo later clarified that by answering "yes," he was only affirming that the -1411 number was his phone number, not that Santander could call him on it. (*Id.*) Elsewhere in the deposition, Henry also emphasized that he repeatedly told Santander he did not want to be called at the -1411 number. (*Id.*) Even if this Court were to accept that Mr. Espejo consented to receive

calls at some unknown time, there is nevertheless an issue of fact as to whether he orally revoked that consent later. *See Robinson v. Green Tree Servicing, LLC*, No. 13 CV 6717, 2015 WL 4038485, at *3 (N.D. Ill. June 26, 2015) (denying summary judgment where plaintiff had presented evidence that he told defendant's representatives "that he did not want to be called on his cellphone any longer"). Because "multiple reasonable inferences" can be drawn from Henry's vague and inconclusive testimony, summary judgment is not appropriate. *Harley-Davidson*, 319 F.3d at 989; *see also McFowler v. Jaimet*, 349 F.3d 436, 454 (7th Cir. 2003) ("Inconsistencies in a witness's testimony are . . . left for the factfinder to assess.")

**B.      Aspect Falls Squarely Within the Established Definition of an ATDS.**

Turning to Santander's ATDS arguments, Santander has failed to set forth any valid legal reason why its Aspect dialing system falls outside the statutory definition of an ATDS: "equipment which has the capacity—(A) to store or produce numbers to be called, using a random or sequential number generator, and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). To hear Santander tell it, Aspect is not an ATDS because (1) it supposedly requires "human intervention" to function (in that a data file must be transferred to Aspect and agents must click buttons before the system will connect calls to them), and (2) the FCC's interpretive guidance— which is binding on this Court—is incorrect. Neither argument can be taken seriously. Because the Aspect system is a predictive dialer that operates without any meaningful human involvement, it clearly falls within the TCPA's definition of an ATDS, and summary judgment must be denied.[6]

---

[6]      Unsurprisingly, courts have concluded that Aspect is an ATDS, and quite incredibly, Santander has even stipulated to that. *See Nelson v. Santander Consumer USA, Inc.*, 931 F. Supp. 2d 919, 923 (W.D. Wis. 2013), *vacated by stipulation* (June 7, 2013); *Molnar v. NCO Fin. Sys., Inc.*, No. 13-CV-00131-BAS JLB, 2015 WL 1906346, at *4 (S.D. Cal. Apr. 20, 2015); *Wilcox v. Green Tree Servicing, LLC*, No. 8:14-CV-1681-T-24, 2015 WL 2092671, at *5 (M.D. Fla. May 5, 2015); *Lynn v. Monarch Recovery Mgmt.*,

**1.** ***Aspect is an ATDS because it is a predictive dialer that places calls without human intervention.***

Aspect presents a textbook example of a predictive dialer in that it employs "algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14022 n.31 (July 3, 2003). Because predictive dialers have become cheap and commonplace communication tools, the FCC has repeatedly ruled that they fall within the statutory definition of an ATDS. *See id.* at 14093; 2008 FCC Order, 23 F.C.C. Rcd. at 566. Last summer, the FCC retraced the reasoning of its prior rulings, emphasizing that "the basic functions of an autodialer are to 'dial numbers without human intervention' and to 'dial thousands of numbers in a short period of time.'" 2015 FCC Order, 30 F.C.C. Rcd. 7961, 7975 (July 10, 2015). Because predictive dialers "retain the capacity to dial thousands of numbers in a short period of time," the FCC ruled, they satisfy the TCPA's definition of an ATDS, even when they do not randomly or sequentially dial. *Id.* at 7973–74. Bound by the FCC's guidance, *see* 47 U.S.C § 227(b)(2); 28 U.S.C. § 2342(1), courts have routinely held that predictive dialers are an ATDS. *See, e.g.*, *Schumacher v. Credit Prot. Ass'n*, No. 4:13-CV-00164-SEB, 2015 WL 5786139, at *8 (S.D. Ind. Sept. 30, 2015) ("[Defendant's dialer] is a predictive dialer and therefore an ATDS. [It] has the capacity to store numbers and dial those numbers from a database.").

Santander does not deny that Aspect is a predictive dialer that can place thousands of calls at once. Indeed, its own TCPA Compliance Manual defines Aspect as a ███████████ █████████████████████████████████████████████████████████████████

---

*Inc.*, No. 11-cv-2824, 2013 WL 1247815, at *1 n.12 (D. Md. Mar. 25, 2013), *reconsideration granted in part on other grounds*, 953 F. Supp. 2d 612 (D. Md. 2013), *aff'd*, 586 F. App'x 103 (4th Cir. 2014).

Instead, Santander contends that Aspect is beyond the TCPA's reach because it cannot function without human intervention which, in reality, amounts to simply flipping the "on" switch each day—i.e., employees uploading a list of numbers for Aspect to dial and agents clicking buttons on their screens to indicate their availability to take calls. (Def.'s Mem. at 12.) Santander's "human intervention" argument is misplaced for a number of reasons.

First, the FCC has explicitly declined to adopt a bright-line "human intervention test," and certainly never ruled that the minimal amount of human activity at play here would exclude a dialer from the TCPA's restrictions. 2015 FCC Order, 30 F.C.C. Rcd. at 7975–76 (noting that question of human intervention "is specific to each individual piece of equipment. . . and is therefore a case-by-case determination."). Second, courts have consistently recognized that some amount of human involvement will always be required at a fundamental level, such as in this case, to indicate that a human is present to speak on a call or place data in a location where a dialer can access it. *See Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 639 (7th Cir. 2012) (noting that "predictive dialers lack human intelligence and, like the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master."). Because "[a] person will always be a but-for cause of any machine's action . . . the FCC's 'human intervention' gloss on the statute requires more than but-for causation." *Johnson v. Yahoo!, Inc.*, No. 14 CV 2028, 2014 WL 7005102, at *5 n.11 (N.D. Ill. Dec. 11, 2014); *see also Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG, 2015 WL 8757028, at *5 (S.D. Cal. Dec. 14, 2015).

Notably, courts have typically found that human intervention existed—and excluded a dialer from the TCPA's purview—only where that involvement was required to *dial* a telephone number, "not simply to activate the process (by assembling a list of numbers and uploading them to the dialer)." *In re Collecto, Inc.*, No. 14-MD-02513-RGS, 2016 WL 552459, at *4 n.9 (D.

Mass. Feb. 10, 2016) (collecting cases). For example, in the *Gragg v. Orange Cab Co.* case Santander relies upon, a taxi dispatcher had to press "enter" and a taxi driver had to press "accept," in order for the system to transmit a text message to would-be passengers, leading the court to conclude that human intervention was "essential" to the act of dialing. 995 F. Supp. 2d 1189, 1193–94 (W.D. Wash. 2014).

Here, by contrast, no human involvement was required to *actually dial* numbers. Although some human involvement was necessary to choose the criteria for the daily call list and move that raw file to a location where Aspect could access and automatically process it, courts have consistently held that this sort of activity does not rise to the level of "human intervention." *See In re Collecto*, 2016 WL 552459, at *4 n.9; *Moore v. Dish Network LLC,* 57 F. Supp. 3d 639, 654 (N.D.W. Va. 2014) ("[I]t is irrelevant under the FCC's definition of a predictive dialer that humans are involved in the process of creating the lists that are entered into the [dialing] software."), *appeal dismissed* (Feb. 24, 2015); *Schumacher*, 2015 WL 5786139, at *8 (same).

Thus, even though Santander uploaded a daily call list, and agents pressed buttons to indicate their readiness to speak with consumers, no human intervention was required to *place* calls, (Pls.' SOF ¶¶ 25–26), and Santander cannot exempt itself from the TCPA on this basis. *See, e.g.*, *Smith v. Markone Fin., LLC*, No. 3:13-CV-933-J-32MCR, 2015 WL 419005, at *3 (M.D. Fla. Feb. 2, 2015) (denying summary judgment because system that "automatically dials numbers from a downloaded list . . . is a predictive dialer and an ATDS").

### 2. The argument that Aspect "does not employ a random or sequential number generator" is irrelevant.

As a last-ditch effort to shield its Aspect dialer from the TCPA, Santander argues that Aspect is not an ATDS because it "does not employ a random or sequential number generator." (Defs.' Mem. at 12.) As stated above, however, the FCC has made it clear that a predictive dialer

is an ATDS, regardless of whether it can randomly or sequentially dial. 2015 FCC Order, 30 F.C.C. Rcd. at 7973–74; *see, e.g.*, *Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 122–23 (S.D. Fla. 2014) ("[I]t does not matter that the [dialing] software is not used to store or produce telephone numbers using a random or sequential number generator. It qualifies as an ATDS . . . because it automatically dials telephone numbers from a preprogrammed list.").

Moreover, as Santander acknowledges, the FCC has made clear that an ATDS need only have the "capacity" to autodial, not the "present ability to do so," *see* 2015 FCC Order, 30 F.C.C. Rcd. at 7974, affirming the rulings of the many courts to have reached this same conclusion previously. *See, e.g.*, *Meyer*, 707 F.3d at 1043 ("[Defendant] does not dispute that its predictive dialers have the capacity described in the TCPA. This is sufficient to determine that [defendant] used an automatic telephone dialing system."); *Nelson*, 931 F. Supp. 2d at 930. Thus, because the Aspect system had the "capacity" to function as a predictive dialer at all times relevant, it falls within the statutory definition of an ATDS for this reason as well. (Pls.' SOF ¶¶ 18–20.)[7]

## IV.    CONCLUSION

For the foregoing reasons, because a reasonable jury could conclude that Plaintiffs did not consent to receive calls at the -6074, -9876, and -1411 numbers, and because Santander's Aspect dialing system clearly meets the statutory definition of an ATDS, Santander's motion for summary judgment should be denied in its entirety.

---

[7]      Though Santander urges the Court to reject the FCC's guidance, (Def.'s Mem. at 13), that power is reserved to federal courts of appeal under the Hobbs Act, 28 U.S.C. §§ 2341, *et seq. See CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 448–449 (7th Cir. 2010). To the extent Santander seeks to stay the case pending the appeal of the 2015 Order, it has not shown how a stay serves judicial economy or impacts the balance of hardships to the parties. *See Bd. of Trs. of Teachers' Ret. Sys. of State of Ill. v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 903 (N.D. Ill. 2002). And even if the D.C. Circuit modified the "capacity" portion of 2015 Order, it would not change the fact that Aspect *actually* functioned as a predictive dialer. (Pls.' SOF ¶ 20.)

Respectfully submitted,

**FAYE LEVINS** individually and on behalf of all others similarly situated, and **HENRY ESPEJO,**

Dated: June 13, 2016

By: <u>s/ Benjamin H. Richman</u>

One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
EDELSON PC
329 Bryant Street, Suite 2C
San Francisco, California 94107
Tel: 415.234.5342
Fax: 415.373.9435

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2016, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system.

s/ Benjamin H. Richman