**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HENRY ESPEJO, | Case No.: 1:11-cv-08987 |
| *Plaintiff*, | Honorable Charles P. Kocoras |
| *v.* | Magistrate Judge Sidney I. Schenkier |
| SANTANDER CONSUMER USA, INC., an Illinois corporation, | |
| *Defendant*. | |

| | |
|---|---|
| FAYE LEVINS, individually and on behalf of all others similarly situated, | Case No.: 1:12-cv-09431 |
| *Plaintiff*, | Honorable Charles P. Kocoras |
| *v.* | Magistrate Judge Sidney I. Schenkier |
| SANTANDER CONSUMER USA, INC., an Illinois corporation, | |
| *Defendant*. | |

**PLAINTIFFS' LOCAL RULE 56.1
STATEMENT OF ADDITIONAL MATERIAL FACTS**

Pursuant to Local Rule 56.1(B)(3)(C), Plaintiffs Faye Levins and Henry Espejo

(collectively "Plaintiffs") submit the following Statement of Additional Material Facts requiring

the denial of summary judgment. All evidence cited herein, which is not otherwise fully included

as an exhibit in Defendant's Appendix ("Def.'s App."), (*Espejo* Dkt. 171; *Levins* Dkt. 98), is

included within Plaintiffs' Appendix of Additional Summary Judgment Exhibits, filed

contemporaneously herewith. Such exhibits are cited herein as "Pls.' Exhibit."

***Santander Placed Calls to Plaintiff Levins' -6074 and -9678 Numbers Without Her Consent.***

1.      The auto loan that Faye Levins obtained was subject to an interest rate of 24.99%. (SCUSA/B 00045 (Def.'s App 217).)

2.      Health problems and thyroid surgery, necessitating time off from her job as a customer service agent, made it difficult for Levins to keep current on her loan. (Faye Levins Deposition Transcript ("Levins Dep."), Pls.' Exhibit 1, at 60:7–61:6.)

3.      On March 27, 2009, Levins called Santander from a cellular telephone number ending -6074 for the first time, promising to make a payment on her auto loan. (SCUSA/E 00034 (Def.'s App. 125).) The activity notes for the call show that a Santander agent designated the -6074 number "IVR1's Home" and that "no verifications were required for Faye Levins." (*Id.*)

4.      ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████ ████████████ The phone numbers are then added to the account as a new method of contact, and a Santander agent can label the number as "home," "cell," or one of several other designations selected from a dropdown menu. (Mark Nerios Deposition Transcript ("Nerios Dep."), Pls.' Exhibit 3, at 42:6–15).)

5.      The word "verifications," or similar, in the activity notes column of Santander's call logs indicates that a consumer has confirmed that his or her contact information is correct. (*See id.* at 46:1–16.)

6.       In the five-month period following her initial call to Santander, Levins received 19 calls from Santander on the -6074 number without her permission. (SCUSA/B 00033 (Def.'s App. 124).) The first of these calls to the -6074 number was placed on June 20, 2009. (*Id.*) The

call logs do not denote that any "verifications" were performed during this time period.

7.     On August 12, 2009, the activity notes indicate that "verifications were required for Faye Levins and were completed[,]" with respect to the -6074 number. (SCUSA/B 00033 (Def.'s App. 124).)

8.     On May 4, 2012, Santander placed its first phone call to Levins' cellular telephone number ending -9678. (SCUSA/B 00003 (Def.'s App. 094).) Santander called this number again on May 7, May 10, and May 14, 2012. (SCUSA/B 00002 (Def.'s App. 093).) The activity notes for these four calls do not indicate that this number was marked "IVR" or that any "verifications" were performed. (SCUSA/B 00002–00003 (Def.'s App. 093–94).) To the contrary, the activity notes for the May 7, 2012 call state that Levins "kept hollering" and hung up on a Santander agent. (SCUSA/B 00002 (Def.'s App. 093).) The activity notes for a May 10, 2012 call reflect that Levins was "upset because she keeps getting calls . . . and states this is harassing." (*Id.*)

***Santander Placed Calls to Plaintiff Henry Espejo's -1411 Number Without His Consent.***

9.     The auto loan that Maria Espejo obtained was subject to an interest rate of 8.33%. (Santander 0420 (Def.'s App. 214).)

10.    Medical expenses made it difficult for Maria Espejo to keep current on her loan. (Maria Espejo Deposition Transcript ("Maria Dep."), Pls.' Exhibit 4, at 53:14–54:5.)

11.    On September 9, 2009, an inbound call was placed to Santander from the -1411 telephone number. (SCUSA/E 0801 (Def.'s App. 090).) The activity notes for this call show that a Santander agent designated the -1411 number "IVR1's Home" and that "verifications were required for Maria Espejo and were completed."

12.    However, Maria Espejo testified that the -1411 telephone number is not her

"home" number and that she never verified the -1411 number as an appropriate number at which
to contact her. (*See* Maria Dep., Pls.' Exhibit 4, at 29:22–30:6 (confirming number ending in -
0537 as home telephone number), *id.* at 65:7–12 (identifying number ending in -1411 as
belonging to husband Henry Espejo), *id.* at 59:7–18 ("Q: Do you recall that they also asked you
if the [-1411] number was a good number to contact you at? A: They never asked me. Q: They
never asked you once whether that was a good contact number? A: Right. Q: I should say, they
never asked you at any time that that was a good contact number the [-1411] number; is that
right? A: They never asked me if that was a good phone number.").)

13.     Henry Espejo, the subscriber for the -1411 cellular telephone number and Maria
Espejo's husband, never authorized Maria Espejo to use his cellular telephone or the -1411
number assigned to it. (*See* Henry Espejo Deposition Transcript, ("Henry Dep."), Pls.' Exhibit 5,
at 66:5–7 (stating that Maria Espejo was not authorized to use -1411 number); 68:25–70:3
(identifying -1411 number as cellular telephone number for which he was sole customer).)

14.     On November, 4, 2009, during an inbound call to Santander placed from the -
1411 number, Henry Espejo spoke to a Santander agent about his wife's loan for the first time.
(SCUSA/E 0800 (Def.'s App. 089) ("spoke with Henry" noted in activity notes).)

15.     As Maria Espejo fell further behind on her payments, Santander began calling the
-1411 number on a regular basis, sometimes multiple times per day. (*See, e.g.*, SCUSA/E 0764
(Def.'s App. 053 (showing five calls placed to -1411 number on May 18 and 19, 2011);
SCUSA/E 0732 (showing four calls placed to -1411 number on March 26, 2012); SCUSA/E
0783 (Def.'s App. 072) (showing four calls placed to -1411 number on Aug. 30, 2010);
SCUSA/E 0798 (Def.'s App. 087) (showing two calls placed to -1411 number on Nov. 21,
2009).)

16.    From 2009 through 2012, Henry Espejo received hundreds of calls from Santander on the -1411 telephone number. (SCUSA/E 0722–0802 (Def.'s App. 011–91).)

17.    Henry Espejo did not consent to receive calls at the -1411 number on November 4, 2009. On an unknown date, Henry Espejo answered "yes" to the question "Is this a good number for you . . .?" (Henry Dep., Pls.' Exhibit 5, at 74:5–12.). In doing so, however, he only affirmed that the -1411 number was his phone number—not that Santander could call him on it:

> Q:    Do you remember counsel asking you a question about whether someone from Santander had said, Can we contact you on that number? Do you remember him asking you that?
> A:    Yes.
> Q:    Do you remember what you said to that?
> A:    No, they can't contact me on that number. Two different questions.
>
> . . .
>
> Q:    When they asked you, Can we contact you on this number, did you say "yes"?
> A:    No.
> Q:    Would you have said "yes"?
> A:    No.
> Q:    Did you ever want Santander to contact you on that phone number?
> A:    No.

(*Id.* at 137:15–23, 138:6–13.) Furthermore, he testified that repeatedly told Santander he did not want to be called at the -1411 number. (*Id.* at 97:11–18; 143:22–144:25.)

***Santander Placed All of the Calls at Issue on a Predictive Dialer that Constitutes an ATDS.***

18.    Santander's Aspect dialer—which was used to place all the calls at issue in this lawsuit—is a ██████████████████████████████████████████ ████████████████████████████ (Santander TCPA Compliance Manual, Pls.' Exhibit 6, SCUSA/E 11032; Aspect Manual, SCUSA/E 0202 (Def.'s App. 221).)

19.    Aspect can place calls in one of several modes, including "predictive," "preview," or "manual." (Joseph Burda Deposition Transcript ("Burda Dep."), Pls.' Exhibit 7, at 58:22–

59:1; Santander TCPA Compliance Manual, Pls.' Exhibit 6, SCUSA/E 11032; Aspect Manual, SCUSA/E 0202 (Def.'s App. 221).) Regardless of the mode in which calls are placed, however, the same Aspect hardware and software is always used to place any call. (Burda Dep., Pls.' Exhibit 7, at 102:21–103:18 (noting that calls using all three dialing modes utilized the same hardware and software), Nightengale Dep., Pls.' Exhibit 2, at 42:8–18 (stating that the Aspect dialer consists of both the hardware and software used for inbound and outbound calls).)

20.    Santander admits to making a large number of phone calls in predictive mode. (Burda Dep., Pls.' Exhibit 7, at 56:4–7, 67:14–25, 68:7–9, 99:3–6; Nightengale Dep., Pls.' Exhibit 2, at 44:22–45:2.)

21.    In predictive mode, Aspect dials lists of telephone numbers at once. (*See* TCPA Compliance Manual, Pls.' Exhibit 6, SCUSA/E 11032 (explaining that in predictive mode, █ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████); Nightengale Dep., Pls.' Exhibit 2, at 58:25–59:5; Burda Dep., Pls.' Exhibit 7, at 40:20–41:15).)

22.    Each day, a criteria-generated list of numbers for Aspect to dial is created as an unprocessed ".raw." file. (*See* Nightengale Dep., Pls.' Exhibit 2, at 63:2–5.) In order for Aspect to upload the file, it is placed into a share location where Aspect can access and process the numbers to be dialed, and load them into a database. (*Id.*; Burda Dep., Pls.' Exhibit 7, at 41:21–42:1 (explaining that the list file is placed in a share location, "[a]nd then we have a—within the Aspect system—we have a process where we actually import the file and it loads that file into the database").) It takes approximately an hour and a half for Aspect to complete the upload process. (Burda Dep., Pls.' Exhibit 7, at 43:16–18.)

23.    In predictive mode, Aspect works its way through the call list by automatically

dialing thousands of telephone numbers at once, setting the pace of outbound calls using ██

████████████████████████████████████████████████████████████████

████████████████ (*See* Aspect Manual, SCUSA/E 0202, 0698 (Def.'s App. 221, 223); *see also* Nightengale Dep., Pls.' Exhibit 2, at 44:18–21 (explaining that as a predictive dialer, "Aspect has an algorithm that helps maintain efficiency on inbound and outbound phone calls."); Burda Dep., Pls.' Exhibit 7, at 48:22–49:2 (noting that "predictive algorithm" determines the number of calls placed at any given time).)

      24.     Aspect begins dialing as soon as a single agent is logged in, placing calls pursuant to a pacing algorithm that determines the number of calls to be made at any given time. (*See* Aspect Manual, SCUSA/E 0202 (Def.'s App. 221); TCPA Compliance Manual, Pls.' Exhibit 6, SCUSA/E 11032 (████████████████████████████████████████████

██); Nightengale Dep., Pls.' Exhibit 2, at 67:7–68:16; Burda Dep., Pls.' Exhibit 7, at 46:18–49:8).) Although the pace of calls automatically adjusts based on the number of agents available, Aspect ████████████████████████████████████████████████████████████

(Santander TCPA Compliance Manual, Pls.' Exhibit 6, SCUSA/E 11032; *see also* Burda Dep., Pls.' Exhibit 7, at 48:22–49:2 (explaining that the number of calls placed at any given time is based on the predictive dialer's algorithm). As Aspect keeps dialing, consumers who have answered their phones are placed in a wait queue until a Santander agent identifies him or herself as available, and the call is then automatically routed to that agent. (Burda Dep., Pls.' Ex. 7, at 116:17–119:15.)

      25.     When Aspect is operating in "predictive" mode, Santander agents do not dial calls. Instead, once the call list is uploaded, "agents log into the system and . . . put themselves in a status to be available to take phone calls," while Aspect dials. (Burda Dep., Pls.' Exhibit 7, at

46:21–47:2.)

26.     While Aspect works its way through the list automatically, Santander agents need only click buttons to show they are "ready to take a phone call" and "identify them[selves] as available resources," so that Aspect may automatically dial a list of telephone numbers at a rate "based on agents that are available at that time to take calls." (*Id.* at 111:23–112:10, 113:3–17, 114:14–21.)

27.     By using an algorithm to match available agents to consumers, while dialing continuously in the background, Santander maximizes the efficiency of its debt collection operation. (Nightengale Dep., Pls.' Exhibit 2, at 44:20–45:2.)

28.     When Mark Nerios—the site director of Santander's Colorado office—was asked what question Santander agents asked to determine whether a number was a "good contact number," his attorney objected that such a line of questioning was "beyond the 30(b)(6) and plus was the subject of the deposition of Mr. Nightengale four or five months ago." (Nerios Dep., Pls.' Exhibit 3, at 5:11–13; 51:7–12; 51:25–52:5.) Matters of TCPA consent or compliance are not included as a topic on Nerios' notice of deposition, (Nerios Notice of Deposition, Pls.' Exhibit 8), and Nerios admittedly lacks personal knowledge about what the designation "IVR1 Home" in the activity notes actually means. (*See* Nerios Dep., Pls.' Exhibit 3, at 51:18–20 ("There's no way from looking at the notes I could tell how the conversation went.").)

*               *               *

Respectfully submitted,

**FAYE LEVINS** individually and on behalf of all others similarly situated, and **HENRY ESPEJO**,

Dated: June 13, 2016                 By: s/ Benjamin H. Richman
                                            One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
EDELSON PC
329 Bryant Street, Suite 2C
San Francisco, California 94107
Tel: 415.234.5342
Fax: 415.373.9435

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2016, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system.

s/ Benjamin H. Richman