**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HENRY ESPEJO, individually and on behalf of all others similarly situated,<br><br>        *Plaintiff,*<br><br>   *v.*<br><br>SANTANDER CONSUMER USA INC., an Illinois corporation,<br><br>        *Defendant.* | Case No.: 1:11-cv-08987<br><br>Honorable Charles P. Kocoras |
| ARICA BONNER, *et al*., on behalf of themselves and all others similarly situated,<br><br>        *Plaintiffs,*<br><br>v.<br><br>SANTANDER CONSUMER USA INC.,<br><br>        *Defendant.* | Case No.: 12-cv-09431<br><br>Honorable Charles P. Kocoras |

**DEFENDANT SANTANDER CONSUMER USA INC.'S
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

James A. Rolfes
(Bar No. 6200271)
*jrolfes@reedsmith.com*
Henry Pietrkowski
(Bar No. 6230048)
*hpietrkowski@reedsmith.com*
REED SMITH LLP
10 South Wacker Drive
Chicago, IL 60606
(312) 207-1000

Abraham J. Colman
*pro hac vice*
*acolman@reedsmith.com*
REED SMITH LLP
355 South Grand Avenue
Los Angeles, CA 90071
(213) 457-8000

Marc A. Lackner
*pro hac vice*
*mlackner@mcguirewoods.com*
David S. Reidy
*dreidy@mcguirewoods.com*
MCGUIRE WOODS LLP
505 Sansome Street, Suite 700
San Francisco, CA 94111
(415) 844-1974

*Attorneys for Defendant Santander Consumer USA, Inc.*

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1

II. SANTANDER IS ENTITLED TO SUMMARY JUDGMENT ON EACH OF
LEVINS' TCPA CLAIMS................................................................................ 3

    A. Santander's Motion Establishes That Levins Gave Santander Prior Express
Consent To Call Each Of Her Three Cell Phone Numbers. ................................. 3

    B. Levins Cannot Refute the Showing That Santander Obtained Her Consent
to Call the 6074 Number On March 27, 2009. ...................................... 4

        1. Santander's Records Show That Levins Gave Consent on March
27, 2009.............................................................................. 4

        2. Levins Does Not Dispute That She Gave Consent During the
March 27 Call. ......................................................................... 6

    C. Levins Cannot Raise A Triable Issue Of Fact On The Issue Of Consent By
Merely Arguing That Her Number Was Not "Verified"—Verification Is
But One Method By Which Santander Documents Consent In Its Account
Notes. ........................................................................................ 8

    D. Santander Is Entitled to Summary Judgment on Levins' TCPA Claims
Arising From Four Manual Calls to Her 9678 Telephone Number........................ 9

III. SANTANDER IS ENTITLED TO SUMMARY JUDGMENT ON ESPEJO'S
TCPA CLAIMS BECAUSE ESPEJO CANNOT DISPUTE HIS OWN
TESTIMONY ADMITTING CONSENT. .................................................... 10

IV. SANTANDER IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IT DID
NOT USE AN "ATDS" TO PLACE THE CALLS AT ISSUE. .................................... 12

    A. Santander's Dialing Equipment Requires Human Intervention to Work. ........... 12

    B. The Court Should Await the Outcome of the D.C. Circuit's *ACA
International* Appeal.......................................................................... 14

V. CONCLUSION............................................................................................. 15

**Cases**

*ACA Int'l v. FCC,*
  Case No. 15-1211 (D.C. Cir. July 10, 2015)....................................................14, 15

*AA Sales & Assocs., Inc. v. Coni-Seal, Inc.*,
  550 F.3d 605 (7th Cir. 2008) ..............................................................................1, 9

*Adams v. Nationstar Mortgage LLC*,
  No. 2:15-cv-09912-DMG (KSx), slip op. (C.D. Cal. June 14, 2016).....................15

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)......................................................................................1, 3, 5

*Chicago Reg'l Council of Carpenters Pension Fund v. Woodlawn Cmty. Dev. Corp.*, No. 09 CV 3983, 2011 WL 6318605 (N.D. Ill. Dec. 15, 2011) ...................5

*Falchenberg v. N.Y. State Dep't of Educ.*,
  642 F. Supp. 2d 156 (S.D.N.Y. 2008), *aff'd*, 338 F. App'x 11 (2d Cir. 2009) ........6

*Glauser v. GroupMe, Inc.*,
  No. C 11-2584 PJH, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015)...........................10

*Gutierrez v. Barclays Grp.*,
  No. 10cv1012 DMS (BGS), 2011 WL 379238 (S.D. Cal. Feb. 9, 2011) ...............12

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  768 F.3d 1110 (11th Cir. 2014) ......................................................................11, 12

*McFlower v. Jiamet*,
  349 F.3d 436 (7th Cir. 2003) .............................................................................11

*Modrowski v. Pigatto*,
  712 F.3d 1166 (7th Cir. 2013) ......................................................................5, 6, 9

*Opoka v. I.N.S.*,
  94 F.3d 392 (7th Cir. 1996) ...............................................................................14

*PPM Fin., Inc. v. Norandal USA, Inc.*,
  392 F.3d 889 (7th Cir. 2004) ................................................................................6

*Rose v. Wells Fargo Advisors*,
  Civ. A. No. 1:15-DV-562-CAP, 2016 WL 3369283 (N.D. Ga. June 14, 2016).....................15

*Shahin v. Synchrony Financial,*
    No. 8:15-cv-02941-MSS-EAJ, slip op. (M.D. Fla. Apr. 12, 2016) ........................................15

*Small v. GE Capital, Inc.,*
    No. 5:15-cv-02479-JGB-DTB, slip op. (C.D. Cal. June 9, 2016) ...........................................15

*Smith v. City of Chicago,*
    242 F.3d 737 (7th Cir. 2001) ................................................................................................5

*Stevenson v. Dart,*
    No. 09 C 2698, 2012 WL 987275 (N.D. Ill. Mar. 22, 2012) .................................................11

*Stinnett v. Ironworks Gym/Executive Health Spa, Inc.,*
    301 F.3d 610 (7th Cir. 2002) ................................................................................................5

*Trudeau v. ConsumersAffairs.com, Inc.,*
    No. 10 C 7193, 2011 WL 3898041 (N.D. Ill. Sept. 6, 2011)................................................14

*Wilcox v. Green Tree Servicing, LLC,*
    No. 8:14-cv-1681-T-24 TGW, 2015 WL 2092671 (M.D. Fla. May 5, 2015) ........................10

*Winskunas v. Birnbaum,*
    23 F.3d 1264 (7th Cir. 1994) ...............................................................................................5

**Statutes**

47 U.S.C. § 227(a)(1).........................................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 30(b)(6)............................................................................................................2, 5, 6

Fed. R. Civ. P. 56(a) ......................................................................................................................1, 3

Fed. R. Evid. 602 .........................................................................................................................5, 6

# I.    INTRODUCTION

The Seventh Circuit has described summary judgment as the "put up or shut up" moment in a lawsuit. *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.*, 550 F.3d 605, 612 (7th Cir. 2008). Santander satisfied its burden on summary judgment by offering evidence that Plaintiffs Faye Levins and Henry Espejo consented to receive telephone calls to their cell phone numbers, thus establishing a complete defense to Plaintiffs' claims against Santander under the Telephone Consumer Protection Act (TCPA). Rather than "put up," Plaintiffs offer nothing after years of litigation and discovery but unsupported speculation and unfounded arguments that fail to raise a triable issue of fact as to consent. Because Plaintiffs fail to satisfy their burden, Santander's Motion must be granted.

Competent testimony and admissible evidence submitted by Santander demonstrate that Levins gave consent for each of her three cell phone numbers: 6954 (written consent provided in Levins' credit application); 9678 (oral consent given in a recorded call with Santander); and 6074 (oral consent given during a March 27, 2009 call as reflected in Santander's account notes). Faced with such conclusive proof, even Levins concedes prior express consent as to the 6954 number, and all but 23 of the calls made to her other two numbers (9678 and 6074), thus entitling Santander, at a minimum, to partial summary judgment as to those calls. Fed. R. Civ. P. 56(a).

And as to the remaining 23 calls, Levins proffers no evidence "upon which a jury could properly proceed to find a verdict" in Levins' favor—*i.e.*, sufficient evidence to demonstrate that Santander *lacked* consent to place those 23 calls. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Levins focuses first on 19 calls placed to the 6074 number. Rather than present evidence, Levins simply *argues* that Santander's evidence of consent—the "IVR1's Home" notation in Levins' March 27, 2009 activity notes—does not mean what Santander's uncontroverted evidence says it means. But Mark Nerios and Wayne Nightengale—Santander

executives with personal knowledge of the use and meaning of the "IVR1's Home" notation—both testified that a Santander associate makes the contemporaneous "IVR1's Home" business record only when a caller provides express consent.[1]

Levins offers no contrary *evidence* to this testimony, nor even suggests an alternate meaning for the "IVR1's Home" term. Instead, she argues half-heartedly that Mr. Nerios was not testifying in his capacity as a Rule 30(b)(6) witness and attempts to misstate Mr. Nerios' testimony confirming that Levins' activity notes contain business-record evidence of her consent on March 27, 2009. Finally, Levins implies, contrary to all testimony and Levins' tape-recorded consent, that the absence of a "verification" notation in her account's activity notes indicates a lack of consent. These unsubstantiated *arguments* are no substitute for *evidence*. Simply put, Levins fails to rebut that the "IVR1's Home" notation confirms her consent prior to the 19 outbound calls from Santander to her 6074 telephone number.

Levins also fails to establish a triable issue with regard to four calls that Santander placed to Levins' 9678 number prior to obtaining her tape-recorded express consent. Levins does not dispute that Santander made those calls via its "manual" as opposed to its "dialer" mode. Thus, the means of placing those calls cannot fit within the definition of an automatic telephone dialing system ("ATDS"), and the calls therefore are not actionable under the TCPA.

Espejo's Opposition fares no better. Santander offered proof that it had consent to call Henry Espejo's number ending 1411, both because Mr. Espejo's wife used the phone and authorized Santander to call to discuss her account, and because Mr. Espejo admitted *he* gave Santander consent to call *him* on that number—also to discuss his wife's account. Espejo's

---

[1] Levins' consent is "reflected in Santander's records"—a standard on which Levins bases her class certification motion, while at the same time seeking to contest those records here.

attempt to walk back this admission cannot be reconciled with the contemporaneous record or his own testimony and his claim must therefore fail.

On this record, Santander is entitled to summary judgment on Plaintiffs' TCPA claims.

## II. SANTANDER IS ENTITLED TO SUMMARY JUDGMENT ON EACH OF LEVINS' TCPA CLAIMS.

### A. Santander's Motion Establishes That Levins Gave Santander Prior Express Consent To Call Each Of Her Three Cell Phone Numbers.

In its Motion, Santander demonstrated, by reference to competent testimony and otherwise admissible evidence, that Levins provided Santander with prior express consent to call her on each of her three cell phone numbers: <u>6954</u> (written consent provided in Levins' credit application); <u>9678</u> (oral consent given in a recorded call with Santander); and <u>6074</u> (oral consent given during a March 27, 2009 call as reflected in Santander's account notes). (Def. Santander Consumer USA Inc.'s Mem. in Support of its Mot. for Summ. J. ("Def.'s Mem.") (*Espejo* Dkt. 169; *Bonner* Dkt. 96) at 4-5, 9.

Levins concedes most of this. She does not dispute that she gave prior express consent to Santander to call her 6954 number. (*See* Pls.' Resp. to Def. Santander's Local Rule 56.1 Stmt. of Material Facts ("Pls.' Resp. to SOF") (*Espejo* Dkt. 196; *Bonner* Dkt. 124) at 37.) And she also agrees that Santander had consent to place all but 23 of the calls made to her other two numbers (9678, and 6074). (*See Id.* at 38, 40-43.) Santander therefore is entitled, at a minimum, to partial summary judgment as to those calls. Fed. R. Civ. P. 56(a).

As to the 23 times Levins claims she was called without consent, the burden shifted to Levins to demonstrate in her Opposition that there is evidence "upon which a jury could properly proceed to find a verdict" in her favor—*i.e.*, sufficient evidence to demonstrate that Santander lacked consent to place those calls. *See Anderson*, 477 U.S. at 251. Levins offers no such evidence.

**B. Levins Cannot Refute the Showing That Santander Obtained Her Consent to Call the 6074 Number On March 27, 2009.**

In support of its Motion, Santander proved that when it designated Levins' 6074 number as "IVR1's Home" in the activity notes, that notation meant that Levins identified the number as a "home" number and told the associate that Santander had permission to call her on that number. (Def.'s Mem. at 5.) In other words, the notation is documented proof of prior express consent. Importantly, Levins offers no evidence to the contrary.

**1. Santander's Records Show That Levins Gave Consent on March 27, 2009.**

Mark Nerios, Santander's Colorado Site Director, and Wayne Nightengale, Santander's Executive Vice President of Servicing, both testified that the "IVR1's Home" notation means that Levins identified the 6074 number as a "home number" and gave consent to be called on that number. (Def.'s Local Rule 56.1 Stmt. of Material Facts ("SOF") (*Espejo* Dkt. 170; *Bonner* Dkt. 97) at 43-44; Def.'s Resp. to Pls.' Local Rule 56.1 Stmt. of Add'l Material Facts ("Resp. to Pls.' SOAF")[2] at 3.) They testified, moreover, that the notation was consistent with Santander's policies and procedures for documenting consent. (SOF at 15; Resp. to Pls.' SOAF at 4.)

Santander trains its associates to ask in-bound callers using numbers identified by its Interactive Voice Response (IVR) system, the type of phone number they have called on (*e.g.*, "home" or "cell") and whether the number is a good number for Santander to reach them. (*Id.*) The designation of such an IVR number as a "home" or "cell" number in the activity notes can only come from the caller providing such identification, and further telling the associate that Santander can use the telephone number to contact the caller on that number. (*Id.*)

In the face of this evidence, Levins' burden in responding to Santander's Motion was to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict"

---

[2] Defendant's Response to Plaintiffs' Local Rule 56.1 Statement of Additional Material Facts is being filed concurrently with this Reply Memorandum.

in her favor. *Anderson*, 477 U.S. at 251; *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994) (evidence provided by nonmovant on summary judgment must be in the form of "admissible documents or attested testimony, such as that found in depositions or affidavits"); *Modrowski v. Pigatto*, 712 F.3d 1166 (7th Cir. 2013) (same). In other words, to rebut Santander's evidence on the meaning of the notation, Levins would have to offer competent evidence advancing an alternative meaning—but she has not done so.

Just as in *Modrowski*, Levins has responded to Santander's Motion merely "by attacking perceived deficiencies of the . . . motion." *Id.* at 1168. Specifically, Levins argues that when Mr. Nerios testified at his deposition on the meaning of "IVR1's Home" notation, he was not at that moment technically testifying in his capacity as a 30(b)(6) witness for Santander. (*See* Pls.' Resp. in Opp'n to Santander Consumer USA Inc.'s Mot. for Summ. J. ("Pls.' Opp'n") (*Espejo* Dkt. 195; *Bonner* Dkt. 123) at 9.) That flimsy response to Santander's showing on summary judgment is irrelevant because Rule 30(b)(6) sets forth the standard by which a corporate entity may be bound by an individual's testimony, not whether that testimony is admissible for the witness's own personal knowledge. *See Chicago Reg'l Council of Carpenters Pension Fund v. Woodlawn Cmty. Dev. Corp.*, No. 09 CV 3983, 2011 WL 6318605, at *1 (N.D. Ill. Dec. 15, 2011) (permitting affidavits of Rule 30(b)(6) witnesses as evidence in a summary judgment motion as long as the witness had personal knowledge of the matter under Federal Rule of Evidence 602).

In considering summary judgment, the court may rely on any evidence that would be admissible at trial. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). The evidence need not be in admissible form but in content. *See Stinnett v. Ironworks Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). Mr. Nerios' testimony easily satisfies this standard:

Mr. Nerios has worked in Santander's customer service for seven years, and for the last two years has overseen its Colorado servicing operation, handling "everything … that involves the servicing side" of that operation. (Resp. to Pls.' SOAF at 28.) Indeed, Levins does not deny that Mr. Nerios testified from personal knowledge, and as such his testimony in admissible. *See Falchenberg v. N.Y. State Dep't of Educ.*, 642 F. Supp. 2d 156, 164 (S.D.N.Y. 2008), *aff'd*, 338 F. App'x 11 (2d Cir. 2009) ("Questions and answers exceeding the scope of the 30(b)(6) notice will not bind the corporation, but are merely treated as the answers of the individual deponent."); *PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 894-95 (7th Cir. 2004) (holding that defendant's corporate witness "was designated as a witness under Fed.R.Civ.P. 30(b)(6), which authorized him to testify not only to matters within his personal knowledge but also to 'matters known or reasonably available to the organization.'") (citation omitted); Fed. R. Evid. 602. Moreover, Mr. Nightengale also testified on personal knowledge as to the meaning of the "IVR1's Home" notation, and that meaning is undisputed. (Resp. to Pls.' SOAF at 4, 28.)

2.    **Levins Does Not Dispute That She Gave Consent During the March 27 Call.**

Considering she was a party to the March 27, 2009 telephone call in which she gave consent to be called on the 6074 number, Levins was uniquely positioned to testify that she did not give consent to be called during her conversation with Santander that day. The fact that Levins does not contradict this point is glaring, and fatal to her attempt to oppose summary judgment. *See Modrowski*, 712 F.3d at 1168-70 (granting summary judgment where plaintiff failed to offer "any evidence in response to defendants' [summary judgment] motion, let alone evidence sufficient to raise a triable issue of fact").

Rather than refute what was said on the call, Levins attempts to discredit Mr. Nerios because the activity notes for the March 27, 2009 call purportedly did not allow him to "tell how the conversation went," or if a "verification actually took place at the time the 'IVR1's home'"

designation was recorded." (Pls.' Opp'n at 9.) This argument misses the mark and misstates Mr. Nerios' testimony regarding Santander's practice of obtaining consent for IVR numbers. Mr. Nerios was clear that Santander trains its associates always to obtain in such conversations the type of phone and whether the IVR number is a good contact number, and to record "IVR1's Home" only if the caller provides consent to call that number. (Resp. to Pls.' SOAF at 4, 28.) Based on his listening to a "ton of calls" over the years, Mr. Nerios further testified that he has heard many variations on how callers provide consent (*e.g.*, "[s]ometimes the customer will say, hey, add this number. Sometimes, … the agent will say this number you're calling in from and …read the phone number"). (*Id.*) Mr. Nerios, in other words, indicated that while the activity notes do not provide an exact transcript of each conversation in which an associate obtains consent, and as a result a way to "tell how the conversation went," he clearly testified to the meaning of "IVR1's Home" and that it represents a contemporaneous recording of Levins' express consent. (*Id.*) And, as set forth above, Levins offers no contrary evidence on the meaning of the notation. As Mr. Nerios and Mr. Nightengale both explained in their sworn testimony, and Plaintiffs have failed to rebut with *any evidence*, Santander's associates record the "IVR1's Home" designation in Santander's activity notes only if the caller provides express consent to call that phone number. (*Id.*)

That Levins remembered providing Santander her 6074 telephone number, used this number when making MoneyGram and Western Union payments to Santander, and verified this number as a good contact number when Santander periodically sought such verification, only further demonstrates that she consistently intended Santander to communicate with her on the 6074 telephone number. Thus, far from "insufficient evidence" as Levins pejoratively suggests, (*see* Pls. Mem. at 8), these facts provide further uncontroverted proof of the consent she gave and

corroborated that she gave permission to call this cell number throughout her relationship with Santander.

**C.** **Levins Cannot Raise A Triable Issue Of Fact On The Issue Of Consent By Merely Arguing That Her Number Was Not "Verified"—Verification Is But One Method By Which Santander Documents Consent In Its Account Notes.**

In her Opposition, Levins confusingly argues that "Santander's records make clear that Levins' 6074 number was not *verified* by Levins (or anyone else) before being designated as "IVR1's Home," claiming Santander did not have prior express consent to make 19 calls made after the March 27, 2009 "IVR1's Home" notation but before the August 12, 2009 "verification" notation. (*See* Pls.' Opp'n. at 7-9 (emphasis added).) While this argument wrongly ignores the meaning of the "IVR1's Home" as demonstrated above, it also stands on an unfounded assumption that Santander obtains consent only when an associate "verifies" a customer's account information.[3] But to the contrary, and as Levins is well aware based on the numerous ways she herself gave Santander consent to place calls to her cellular telephones, Santander obtains consent through various means with "verification" being one of many notations Santander uses to document that consent in its customers' activity notes.

For example, Levins gave written prior express consent to call her 6954 number in her credit application (a fact she works hard to ignore in her Opposition), well before any "verification" of that number. (SOF at 35, 37.) The May 14, 2012 audio recording in which Levins provided express consent to call her 9678 number is yet another prime example of

---

[3] Santander's "verification" process involves associates confirming cell phone information on a periodic basis depending on the delinquency of a customer account. (Resp. to Pls.' SOAF at 5.) Since 2009, Santander has used a verification tab on the My Sup computer program that prompts associates to verify cell phone information in accordance with these delinquency criteria. (*Id.*) The system further inserts into an account's activity notes a "VERIFICATIONS WERE REQUIRED" notation that an associate will attempt to perform when talking to a customer. (*See e.g.*, *id.*.) If such verification is done (*i.e.*, that a Santander associate verified the company has the correct number and that the customer agrees to be reached at that number (Resp. to Pls.' SOAF at 4)), the associate will document the verification as completed in the activity notes. (*Id.* at 5) As Plaintiffs concede, a verification of a customer account demonstrates express consent to call the verified number. (Pls.' Opp'n. at 8.)

express consent received outside of the verification process. Activity notes for that day state "RECORDINGID:57088908 PHONE NUMBER: xxxxxx9878." (SOF at 38; Resp. to Pls.' SOAF at 8.) On that recording, Levins gave the 9678 number as a current cell phone number on which Santander could call her. (SOF at 38.) Thus, even though the activity notes do not contain the word "verification" or other similar wording regarding Levins' consent, Santander indisputably, and consistent with its procedures and associate training, obtained Levins' express consent to call the 9678 number.

The evidence Santander has submitted therefore  shows that "verification" of a customer's account information is one way, but not the only way, Santander obtains express consent. (Resp. to Pls.' SOAF at 6.) Thus, the absence of a verification notation in a customer's activity notes does not mean Santander failed to receive the customer's consent. (*Id.*)

In the face of this evidence, Levins' burden on summary judgment required her to come forward with admissible evidence sufficient to raise a triable issue of fact on the question of consent—in the Seventh Circuit's words, to "put up or shut up." *AA Sales*, 550 F.3d at 612. The evidence shows that Santander obtains consent in a variety of different ways, including the consent it obtained from Levins, and that Santander further verifies consent over time. Absent "any evidence in response to defendants' motion, let alone evidence sufficient to raise a triable issue of fact," *Modrowski*, 712 F.3d at 1168, Levins' Opposition fails and Santander is entitled to summary judgment on all calls made to her 6074 number.

**D.      Santander Is Entitled to Summary Judgment on Levins' TCPA Claims Arising From Four Manual Calls to Her 9678 Telephone Number.**

Levins concedes that all but four calls made to her 9678 cell phone number do not support a TCPA claim. (*See* Pls.' Opp'n. at 10.) Again, faced with an audio recording that memorialized her express consent for Santander to call this number, Levins concedes, as she

must, that Santander had permission to call her 9678 phone. (Pls.' Resp. to SOF at 38.) Hoping to salvage her TCPA claim, however, Levins now asserts that the four manually dialed calls to this number prior to receipt of the recorded consent violated the TCPA. She is wrong.

It is fundamental that the TCPA does not prohibit manual calls to cell phones. Thus, where a call requires human intervention, it is taken outside the scope of an ATDS call. *See, e.g., Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015); *see, e.g.*, *Wilcox v. Green Tree Servicing, LLC*, No. 8:14-cv-1681-T-24 TGW, 2015 WL 2092671, at *5 (M.D. Fla. May 5, 2015) (granting summary judgment to defendant on TCPA claim for five manually dialed calls). As Santander explained—and Levins does not contest—Santander placed four calls to Levins' 9678 number in the "manual mode" of its Aspect system. (*See* Pls.' Resp. to SOF at 39.) This required a Santander associate to either mouse click on the 9678 telephone number on a computer screen or type in the full 10-digit number. (SOF at 39, 49.) Because Santander manually dialed the four calls to 9678 prior to the unambiguous recorded consent, they are not subject to the TCPA, and any claim based on these calls must fail.[4]

### III. SANTANDER IS ENTITLED TO SUMMARY JUDGMENT ON ESPEJO'S TCPA CLAIMS BECAUSE ESPEJO CANNOT DISPUTE HIS OWN TESTIMONY ADMITTING CONSENT.

At his deposition, Espejo in no uncertain terms, and in words he volunteered, said "[Santander associates] would ask me, can we call you on this number?" – to which he replied "yes." (SOF at 16.) After taking a break with his lawyer, however, he changed that answer, insisting instead that he said "No" when Santander associates asked if they could contact him at that number. (Resp. to Pls.' SOAF at 17.) Espejo further asserted that Santander should have understood his "yes" to mean "no," and that he only meant to confirm the 1411 cell phone

---

[4] To the extent that Plaintiffs now claim that these four manual calls violate the TCPA because of the capacity of Santander's telephone system, that contention is addressed in Section IV below.

number was his phone number – not to indicate that Santander could call him on it. (*Id.*) At his lawyer's prompting he further claimed to have "always" said in his calls with Santander, "don't call me." (*Id.*) But Espejo later changed his testimony again, agreeing that he did not make this request on the 25 inbound calls he and his wife made to Santander seeking accommodations, and instead limiting the purported 'do-not-call' request to only the four outbound calls Santander made to him. (*Id.*; SOF at 18-21.)

Santander's records show no such "do not call" request that comports with Espejo's ever changing and uncorroborated testimony. (SOF at 19; Resp. to Pls.' SOAF at 17.) This testimony also is inconsistent with the activity notes that Santander's associates documented contemporaneously during the four calls Espejo answered (and which accurately captured Mr. and Mrs. Espejo's requests for deferments due to medical bills or car repair expenses, or claiming the check was, or would be, in the mail). (SOF at 21.) "Belated assertions" irreconcilable with the facts do not create inconsistencies that require adjudication by the trier of fact. *McFlower v. Jiamet*, 349 F.3d 436, 454 (7th Cir. 2003); *Stevenson v. Dart*, No. 09 C 2698, 2012 WL 987275, at *2 n.2 (N.D. Ill. Mar. 22, 2012) ("a party cannot create questions of fact and/or credibility by belatedly issuing contradictory statements that ameliorate or contradict prior sworn statements, at least not without further support in the record"). As Espejo fails to come forward with any credible evidence that he did not, time and again, provide the consent documented in Santander's contemporaneous records, he does not provide any genuine dispute of material fact to prevent the Court's entry of summary judgment.

Santander's records that reflect Maria Espejo's verification (with her husband's tacit approval) only further corroborates that Santander had consent to call the 1411 telephone number before ever making an outbound call to that number. (SOF 11.) *See Mais v. Gulf Coast*

*Collection Bureau, Inc.*, 768 F.3d 1110, 1123 (11th Cir. 2014) (holding wife's disclosure of husband's cell phone number on hospital admission form was prior express consent to receive debt collection calls); *Gutierrez v. Barclays Grp.*, No. 10cv1012 DMS (BGS), 2011 WL 579238, at *3 (S.D. Cal. Feb. 9, 2011) (holding husband had "common authority" over his spouse's cellular telephone that enabled him to give the credit card company prior express consent under the TCPA).[5] Thus, for this additional reason, the Court should grant Santander's requested summary judgment on Espejo's claims.

### IV. SANTANDER IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IT DID NOT USE AN "ATDS" TO PLACE THE CALLS AT ISSUE.

#### A. Santander's Dialing Equipment Requires Human Intervention to Work.

As Plaintiffs concede, the July 10, 2015 FCC Order found that the question of how much human intervention is necessary to prevent dialing equipment from being considered an ATDS "is specific to each individual piece of equipment . . . and is therefore a case-by-case determination." (Pls.' Opp'n. at 13 (citing 2015 FCC Order, 30 F.C.C. Rcd. at 7975-76).) Even so, Plaintiffs stop short of conducting any such analysis, content instead to simplistically refer to the "predictive" dialing mode available on Santander's Aspect dialing system. (Pls.' Opp'n. at 12.) But the existence of such a mode does not automatically mean that Santander uses an ATDS. To the contrary, as shown by the undisputed facts, the manner in which the company employs this dialing system involves human intervention that removes Santander's use of the Aspect System dialer from the FCC's ATDS definition.

---

[5] That Mrs. Espejo now claims to have never provided express consent (Pls.' SOF 12) on the multiple calls she made using the 1411 number (SOF 9-13), does not contradict the clear evidence of Mr. Espejo's consent, or thus create a material issue of fact regarding his consent. As Plaintiffs concede that a "verification" notation represents proof of consent, the fact of a recorded verification for Mrs. Espejo only gives further weight to Espejo's admission that he gave consent. Further, to argue such individual denials undermine the meaning of "verification" in Santander's records would undermine the premise of the putative class Levins defines based on Santander's records, and would demand individualized proof that would overwhelm any common issue.

Plaintiffs do not dispute that, under Santander's operating protocol, one or more associates take multiple steps to launch calls using the Aspect "predictive dialer" function. (SOF at 51-54; Resp. to Pls.' SOAF at 23.) For the calls to start, an associate must first log into the system and then press a button indicating "idle status," meaning the associate is ready to place and receive a call. (*Id.*) Further, employees must continue to manually press buttons to signal the need for another call. (*Id.*) Once the call is finished and documented, the associate must press another button called "Get Next" to indicate that he or she is ready for the next call. (Resp. to Pls.' SOAF at 23.) This series of manual entries—disposition the call, press "Done" and then press "Get Next"—must be made after each and every phone call, and each time the agent must indicate that he or she is in "idle" mode and ready to make another call. (*Id.*) The agent also has various codes (*e.g.*, "go into a meeting," "personal time,") that prevent the system from calling additional customers. (*Id.*) In this way, the system will not dial numbers without being triggered by human intervention; and all of this is in addition to a human being manually uploading a list of numbers to be called each morning. (*Id.*)

As set forth in Santander's opening brief, this level of human intervention has led courts to dismiss TCPA claims based on a finding that the defendant did not use an ATDS subject to TCPA restrictions. (Def's Mem. at 11-12.) Significantly, Santander does not blast out thousands of phone calls or text messages to consumers using an automated dialing machine without any human intervention involved. Instead, the undisputed evidence shows the exact opposite: that individual human intervention causes debt collection calls to be made to a selected list of customers' phone numbers based on specific criteria set by the company.[6]

---

[6] Plaintiffs' citation to other cases where an Aspect "predictive" dialing system was determined to be an ATDS does not address whether the systems in those cases were configured the same way or were being used in the same manner that Santander used here. (Pls.' Opp'n. at 11 n.6.) Plaintiffs therefore have not come forward with any authority to show that the Aspect predictive dialing system *always* is considered

**B.    The Court Should Await the Outcome of the D.C. Circuit's *ACA International* Appeal.**

Plaintiffs rely heavily on the July 10, 2015 FCC Ruling now on appeal to the D.C. Circuit in *ACA Int'l v. FCC*, Appeal No. 15-1211 (D.C. Cir.). Central to that appeal is whether the FCC exceeded the authority Congress delegated to it when it gave an expansive interpretation to the ATDS definition, which requires that the numbers be stored or produced "using a random or sequential number generator." 47 U.S.C. § 227(a)(1); *see* Pet.'s Opening Brief at 4, 21-39 (Supp. App. 052, 069-087.)[7] Alternatively, the petitioner seeks clarity as to whether a "predictive dialer" still must have the requisite "capacity" to use a random or sequential number generator to be considered an ATDS under the statute. *Id.* at 7-8, 36-38 (Supp. App. 055-056, 084-086.) The appeal also raises the issue of whether it is the "present" or "potential" capacity of the dialing equipment that matters with respect to the ATDS definition. *Id.* at 15-16, 21-31 (Supp. App. 063-064, 069-079.) While this Court previously denied a stay of this case because Plaintiffs relied on "the present capacity of the equipment used, not any future capacity," (*Espejo* Dkt. 88, Order on Motion to Stay at 6), Plaintiffs apparently have abandoned that limitation and now argue that the "capacity" to autodial is *not* limited to the "present ability to do so." (Pls.' Opp'n. at 15 (citing 2015 FCC Order).) But the evidence in this case is undisputed that Santander's Aspect system does *not* have the current capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. (Resp. to Pls.' SOAF 18.)

---

an ATDS no matter what the specific facts of the case in terms of human intervention. Plaintiffs also try to cite to the *Nelson v. Santander Consumer USA, Inc.* decision, but that opinion was vacated, *Nelson v. Santander Consumer USA, Inc.*, No. 11-cv-307-bbc, 2013 WL 5377280, at *1 (W.D. Wis. June 7, 2013), and, in any event, Santander never "stipulated" to the existence of an ATDS issue in that case. The human intervention facts that are before this Court on summary judgment never were raised in the *Nelson* action.

[7] Courts may take judicial notice of court documents in other cases. *Trudeau v. ConsumerAffairs.com, Inc.*, No. 10 C 7193, 2011 WL 3898041, at *2 (N.D. Ill. Sept. 6, 2011); *Opoka v. I.N.S.*, 94 F.3d 392, 395 (7th Cir. 1996) (recognizing that proceedings in other courts, both inside and outside the federal system, may be judicially noticed).

To the extent this Court determines that the ATDS issues prevent summary judgment from being granted in Santander's favor on any calls at issue, then Santander respectfully requests that the Court stay its decision on this matter until the outcome of the D.C. Circuit appeal in *ACA Int'l*, as many other federal courts around the country have done recently. *See* Def.'s Mem. at 13 n.3 (citing cases granting stays under *ACA Int'l*); *see also Rose v. Wells Fargo Advisors, LLC*, Civ. A. No. 1:16-CV-562-CAP, 2016 WL 3369283, at *1-2 (N.D. Ga. June 14, 2016) (granting stay of TCPA case under *ACA Int'l*); *Adams v. Nationstar Mortgage LLC*, No. 2:15-cv-09912-DMG (KSx), (C.D. Cal. Jun 14, 2016) (same); *Small v. GE Capital, Inc.*, Case No. 5:15-cv-02479-JGB-DTB, slip op. (C.D. Cal. June 9, 2016) (same); *Shahin v. Synchrony Financial, et al.,* Case No. 8:15-cv-02941-MSS-EAJ, slip op. (M.D. Fla. April 12, 2016) (same). A stay would serve judicial economy and would save the parties needless time and expense trying a case that lacks any legal basis under the TCPA.

## V.     CONCLUSION

Santander's Motion establishes a complete defense to Plaintiffs' TCPA claims by proving that both Levins and Espejo gave consent to receive calls from Santander on the cellular phones at issue. Levins concedes Santander's Motion as to most of those calls, and fails to proffer any evidence to raise a material issue of fact as to the others. Espejo also cannot walk back his admission of consent simply by claiming a revocation that is irreconcilable both with Santander's contemporaneous records, and with his and his wife's extended use of that number to communicate with Santander regarding his wife's account. Moreover, even if Plaintiffs had raised an issue of fact as to consent, both the manual and "predictive dialer" calls on Santander's telephone system require human intervention, and thus did not involve an ATDS.  These facts further support Santander's summary judgment motion.

Dated: July 11, 2016

Respectfully submitted

**SANTANDER CONSUMER USA INC.,**
*Defendant*

By: _____*/s/ James A. Rolfes*_____
One of Its Attorneys

| | | |
|---|---|---|
| James A. Rolfes | Abraham J. Colman | Marc A. Lackner |
| (Bar No. 6200271) | *pro hac vice* | *pro hac vice* |
| *jrolfes@reedsmith.com* | *acolman@reedsmith.com* | *mlackner@mcguirewoods.com* |
| Henry Pietrkowski | REED SMITH LLP | David S. Reidy |
| (Bar No. 6230048) | 355 South Grand Avenue | *dreidy@mcguirewoods.com* |
| *hpietrkowski@reedsmith.com* | Los Angeles, CA 90071 | MCGUIRE WOODS LLP |
| REED SMITH LLP | (213) 457-8000 | 505 Sansome Street, Suite 700 |
| 10 South Wacker Drive | | San Francisco, CA 94111 |
| Chicago, IL 60606 | | (415) 844-1974 |
| (312) 207-1000 | | |

*Attorneys for Defendant Santander Consumer USA, Inc.*

**CERTIFICATE OF SERVICE**

I, James A. Rolfes, state that on July 11, 2016, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all parties.

_____*/s/ James A. Rolfes*_____