## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| HENRY ESPEJO, individually and on behalf of all others similarly situated,<br><br>　　　　*Plaintiff*,<br><br>　　v.<br><br>SANTANDER CONSUMER USA, INC., an Illinois corporation,<br><br>　　　　*Defendant*. | Case No.: 1:11-cv-08987<br><br>Honorable Charles P. Kocoras<br><br>Magistrate Judge Sidney I. Schenkier |
| FAYE LEVINS, individually and on behalf of all others similarly situated,<br><br>　　　　*Plaintiff*,<br><br>　　v.<br><br>SANTANDER CONSUMER USA, INC., an Illinois corporation,<br><br>　　　　*Defendant*. | Case No.: 1:12-cv-09431<br><br>Honorable Charles P. Kocoras<br><br>Magistrate Judge Sidney I. Schenkier |

## PLAINTIFF FAYE LEVINS'S REPLY IN SUPPORT OF HER
## MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................................1

ARGUMENT.........................................................................................................................1

I.      The Proposed Class and Subclass Are Not "Fail Safe." ........................................1

II.     The Proposed Class Presents Common Questions with Common Answers.......................2

        A.      Santander's Unlawful Calls to the Class Constitute a Common Injury..................3

        B.      Whether Santander's Aspect Dialer is an ATDS is a Common Question. ..............4

        C.      Whether Santander's Conduct Triggers Liability is a Common Question. .............5

III.    Levins is a Typical Member and Adequate Representative of the Class............................6

        A.      Levins is a Class Member Because She Satisfies Each of its Defining Criteria. ...................................................................................................................6

        B.      Santander's Summary Judgment Motion Does Not Alter Levins's Adequacy. ...............................................................................................................7

IV.    Common Issues Will Predominate as to the Class's and Subclass's Claims.......................8

        A.      Questions Pertaining to Class Membership Do Not Defeat Predominance.............9

        B.      Santander Lacks Specific Evidence of Consent to Defeat Predominance..............9

        C.      Individualized Damages Calculations Cannot Defeat Class Certification. ...........10

V.      A Class Action Is a Superior Method of Adjudicating the Class's Claims. .....................11

        A.      Issues Identifying Class Members Will Not Render Class Treatment Inferior. ...............................................................................................................11

        B.      Superiority Does Not Hinge Upon the Incentive to Bring Individual Claims. ..................................................................................................................14

        C.      Proportionality Is Not a Bar to Class Certification. ..............................................15

CONCLUSION ...................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**<u>United States Supreme Court Cases</u>**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................9

*Simon v. Eastern Ky. Welfare Rights Organization*,
    426 U.S. 26 (1976) ................................................................................3

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .........................................................................3

**<u>United States Circuit Court of Appeals Cases</u>**

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
    571 F.3d 672 (7th Cir. 2009) ..............................................................3

*Mace v. Ran Ru Credit Corp.*, 1
    09 F.3d 338 (7th Cir. 1997) .............................................................1, 2

*McCabe v. Crawford & Co.*,
    210 F.R.D. 631, 644 (N.D. Ill. 2002) ...............................................16

*Messner v. Northshore Univ. Health Sys.*,
    669 F.3d 802 (7th Cir. 2012) ...........................................................3, 4

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ..................................................... *passim*

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ..............................................................7

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ............................................................7

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ..........................................................2-3

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ..............................................................2

**<u>United States District Court Cases</u>**

*Abdeljalil v. Gen. Elec. Cap. Corp.*,
    306 F.R.D. 303 (S.D. Cal. 2014) ...................................................4, 15

ii

*Agne v. Papa John's Intern., Inc.*,
    286 F.R.D. 559 (W.D. Wash. 2012) ...................................................................5

*Balbarin v. N. Star*,
    10 C 1846, 2011 WL 211013 (N.D. Ill. Jan. 21, 2011) .......................................5

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill. 2014) .....................................................9, 11, 12, 14

*Booth v. Appstack, Inc.*,
    No. 13-cv-1533, 2016 WL 3030256 (W.D. Wash. May 25, 2016) .............................3, 12

*Forman v. Data Transfer, Inc.*,
    165 F.R.D. 400 (E.D. Pa. 1995) .................................................................14

*Fox v. Riverview Realty Partners*,
    No. 12 C 9350, 2014 WL 1613022 (N.D. Ill. Apr. 22, 2014) ...........................3

*Green v. Service Master on Location Servs. Corp.*,
    No. 07-cv-4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009). ........................15

*Jamison v. First Credit Servs., Inc.*,
    290 F.R.D. 92 (N.D. Ill. 2013) ...............................................................10, 11

*Johnson v. Yahoo!, Inc.*,
    No. 14 CV 2028, 2016 WL 25711 (N.D. Ill. Jan. 4, 2016) ....................... *passim*

*Kurzci v. Eli Lilly*,
    160 F.R.D. 667 (N.D. Ohio 1995) ...............................................................8

*Manno v. Healthcare Revenue Recovery Group, LLC*,
    289 F.R.D. 674 (S.D. Fla. 2013) .................................................................14

*Rogers v. Capital One Bank (USA), N.A.*,
    No. 15-cv-4016, 2016 WL 3162592 (N.D. Ga. June 7, 2016) ...........................3

*Silbaugh v. Viking Magazine Servs.*,
    278 F.R.D. 389 (N.D. Ohio 2012) ...............................................................5

*Stemple v. QC Holdings, Inc.*,
    No. 12-cv-1997, 2014 WL 4409817 (S.D. Cal. Sept. 5, 2014) ...........................5

*Suchanek v. Sturm Foods, Inc.*,
    311 F.R.D. 239 (S.D. Ill. 2015) .................................................................3

*Targin Sign Sys., Inc. v. Preferred Chiropractic Center, Ltd.*,
    679 F. Supp. 2d 894 (N.D. Ill. 2010) ...............................................................11

*Thrasher-Lyon v. Illinois Farmers Ins. Co.*,
    861 F. Supp. 2d 898 (N.D. Ill. 2012) ...............................................................10

*Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*,
    274 F.R.D. 229 (S.D. Ill. 2011) .......................................................................14

*Vill. of Bedford Park v. Expedia, Inc. (WA)*,
    309 F.R.D. 442 (N.D. Ill. 2015) .........................................................................2

## Statutory Provisions

47 U.S.C. § 227 ....................................................................................................2

## Other Authorities

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    30 F.C.C. Rcd. 7961 (July 10, 2015) ..................................................................4

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    23 F.C.C. Rcd. 559 (Jan. 4, 2008)....................................................................10

Rozanne Andersen,
    *The 2nd Big Myth You Probably Believe About Manual Dialing*, Ontario
    Systems (January 27, 2015), http://hub.ontariosystems.com/the-2nd-big-myth-you-
    probably-believe-about-manual-dialing................................................................4

**<u>INTRODUCTION</u>**

Plaintiff Faye Levins seeks to certify a class of people who, like her, received auto-dialed calls from Defendant Santander Consumer USA, Inc. on cell phone numbers they didn't provide to Santander or authorize it to call. In response, Santander raises three main arguments. ***First***, it argues that Plaintiff has proposed a "fail safe" class. That is mistaken because the class is defined by reference to objective factual criteria, rather than success on the merits. ***Second***, that Levins is not actually a member of the class, and therefore is not a typical and adequate representative. Santander's own records, however, show the opposite to be true. And ***third***, that class treatment is inferior to other methods of adjudication, and that proceeding as a class action would be unmanageable. But Santander's previous representations to this Court and another, the testimony of its experts, and its own meticulous record keeping all prove those challenges to be unfounded. As detailed below, Santander's arguments against class certification are deficient, and the Court should therefore grant Plaintiff's Motion for Class Certification in its entirety.

**<u>ARGUMENT</u>**

**I.      The Proposed Class and Subclass Are Not "Fail Safe."**

Santander argues that the proposed class "excludes those persons whose claims will fail on the grounds they provided express consent," (Def.'s Response in Opposition to Class Cert. ("Opp.") at 15) and is therefore impermissibly "fail-safe"—i.e., it is "not properly defined" because "if a plaintiff loses, she drops out and can subject the defendant to another round of litigation." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015). A fail-safe class is "improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 925 (7th Cir. 2012). "The key to avoiding this problem is to define the class so that membership does not depend on the liability of the defendant." *Mullins*, 795 F.3d at 661.

Here, even after determining individuals' membership, the Court still must decide whether (a) Santander's Aspect dialer is an ATDS, and (b) Santander can establish prior express consent. *See* 47 U.S.C. § 227(a). A favorable judgment on either issue would give Santander a class-wide win. *See Mullins*, 795 F.3d at 661.

Santander's real worry is that certification would leave it facing a class of people for whom it lacks proof of consent. But Plaintiff is allowed to limit the Class to those whose claims are likely to succeed. *See Johnson v. Yahoo!, Inc.*, 2016 WL 25711, at *3 (N.D. Ill. Jan. 4, 2016) (rejecting argument that class defined by specific criteria was too narrow, holding that plaintiffs "have no obligation to bring the broadest class action possible," and noting that "[a]s plaintiffs see it, obtaining a remedy for one month's worth of class members is superior to obtaining it for no months' worth. I agree.") (citing *Mace v. Ran Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997)). Indeed, whether a individual is a class member will almost always "'go[] to the heart of the claims,'" but that does not mean "'a proscribed fail-safe class [exists]'" nor that class certification is inappropriate. *Vill. of Bedford Park v. Expedia, Inc. (WA)*, 309 F.R.D. 442, 454 (N.D. Ill. 2015) (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012).[1]

## II.     The Proposed Class Presents Common Questions with Common Answers.

Next, Santander contends that the Class fails Rule 23(a)(2)'s commonality requirement because Plaintiff has only identified "common characteristic[s]" of the Class members, rather than "common questions" appropriate for class-wide resolution. (Opp. at 19.) But because each Class member asserts the same claim, those common characteristics will generate common answers to common questions, satisfying Rule 23(a)(2). *See Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 255 (S.D. Ill. 2015) ("Where the same conduct or practice by the same defendant

---

[1]     Even if Santander were right, avoiding a fail-safe class "can and should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner*, 669 F.3d at 826.

gives rise to the same kind of claims from all class members, there is a common question.").

### A. Santander's Unlawful Calls to the Class Constitute a Common Injury.

Santander first argues that the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), compels an individualized inquiry into whether each Class member suffered an "injury in fact." (Opp. at 20.) But *Spokeo* has nothing to do with class certification. *See* 136 S. Ct. at 1547 n.6 ("That a suit may be a class action . . . adds nothing to the question of standing[.]") (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n. 20 (1976)). Further, "it is necessary in the Seventh Circuit only for one named class plaintiff to have standing for the class to be certified," so "[t]he Court will not deny class certification based on the arguable lack of standing of certain unnamed class members." *Fox v. Riverview Realty Partners*, No. 12 C 9350, 2014 WL 1613022, at *3–4 (N.D. Ill. Apr. 22, 2014) (citing *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676–77 (7th Cir. 2009)).

And even if the standing of absent Class members were at issue, it would pose no problem here. A person who receives a call in violation of the TCPA has suffered a concrete injury that is "real" and that "actually exist[s]" because Congress has "identif[ied]" receiving such a call as an "intangible harm[] that meet[s] minimum Article III requirements." *See Spokeo*, 136 S. Ct. at 1548-49; *Rogers v. Capital One Bank (USA), N.A.*, No. 15-cv-4016, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016) ("As the Eleventh Circuit has held, a violation of the TCPA is a concrete injury."); *see also Booth v. Appstack, Inc.*, No. 13-cv-1533, 2016 WL 3030256, at *5–6 (W.D. Wash. May 25, 2016). As Santander's records demonstrate, every Class member received an unlawful, autodialed call, and therefore every Class member has standing.

### B. Whether Santander's Aspect Dialer is an ATDS is a Common Question.

Santander also argues that whether its Aspect dialer is an ATDS must be analyzed on an individualized basis, because some calls were made using the dialer's "predictive" dialing mode,

while others were made using the "manual" and "preview" modes. (Opp. at 20 n.5.) The record is clear, however, that the Aspect dialer's ATDS status can be evaluated on a class-wide basis. As Santander's Rule 30(b)(6) witness testified, "regardless of the mode . . . the[] [calls] were made in[,] the agents handling the calls would have had the same equipment." (Burda Dep. Tr., Ex. F to Pl.'s Mot. for Class Cert. ("Cert. Ex." F) at 105:21–106:3).[2] In other words, regardless of the dialing mode used, each call was made with the same "particular piece of equipment," (*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (the "2015 Order"), 30 F.C.C. Rcd. 7961, 7975 ¶ 17 (July 10, 2015)), and the ATDS inquiry can be resolved commonly. *See Johnson*, 2016 WL 25711, at *3 ("[W]hether [defendant's] PC2SMS platform constitutes an automatic telephone dialing system" was a common question); *Abdeljalil v. Gen. Elec. Cap. Corp.*, 306 F.R.D. 303, 308 (S.D. Cal. 2014) ("[W]hether defendant placed ATDS and/or artificial or prerecorded voice calls via [defendant's dialer]" presented common question).

Accordingly, once the Class is certified, the Court can resolve the question of whether the Aspect dialer—which was used to call each Class member—is an ATDS on a class-wide basis.

### C. Whether Santander's Conduct Triggers Liability is a Common Question.

Next, Santander mistakenly argues that its consent to place the calls cannot be commonly resolved, because "absence of consent is a common *characteristic* of the class members, but is not a common *question*…." (Opp. at 19 (emphasis in original; internal quotations omitted).)

---

[2]     As one provider of telephone dialing equipment explains:

> In other words, if the technology you use to contact consumers has any capacity to dial predictively, or pull from a database of numbers and dial them, current judicial opinion indicates it is an autodialer. Period. This is true whether you launch the call manually by pressing a field, or if you enter 10 digits on a keypad.

Rozanne Andersen, *The 2nd Big Myth You Probably Believe About Manual Dialing*, Ontario Systems (January 27, 2015), http://hub.ontariosystems.com/the-2nd-big-myth-you-probably-believe-about-manual-dialing.

Consent can be evaluated on a class-wide basis when its evidence is uniformly lacking. *See Balbarin v. N. Star*, 10 C 1846, 2011 WL 211013 (N.D. Ill. Jan. 21, 2011), at *1 (commonality found where class "exclude[d] individuals who provided their numbers to either defendant or the original creditor"); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012) (hypothetical consent issues insufficient to "argue that individual issues regarding consent outweigh . . . commonality"); *Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) (commonality where defendant uniformly lacked concrete evidence of consent).

Judge Shah's recent opinion in *Johnson v. Yahoo!* is instructive here. In that case, the proposed class definition excluded individuals who provided their phone numbers to the defendant during a signup process. 2016 WL 25711, at *7. The defendant then asserted several methods by which proposed class members *could* have consented to be called, and Judge Shah found that each was either (a) purely hypothetical, without any actual supporting evidence, or (b) amenable to class-wide proof based on the defendant's records. *Id.* As such, Judge Shah found consent to be a common question. *Id.*; *see also Stemple v. QC Holdings, Inc.*, No. 12-cv-1997, 2014 WL 4409817, at *8–9 (S.D. Cal. Sept. 5, 2014) (finding consent to be a common question where class definition excluded individuals who provided their number on loan applications).

Accordingly, consent can be adjudicated on a class-wide basis by virtue of Santander's uniform failure to provide any evidence of their consent.

## III. Levins is a Typical Member and Adequate Representative of the Class.

As to typicality and adequacy, Santander argues that Levins is not a member of the Class, that she will be distracted by Santander's summary judgment motion against her, and that to succeed on her claim, she must challenge the veracity of Santander's records, despite the Class's reliance on them. Each argument is mistaken.

**A. Levins is a Class Member Because She Satisfies Each of its Defining Criteria.**

Santander argues that Levins is not a typical Class member because she's not a member at all. (Opp. at 16–17.) In support, Santander cites its designation of Levins's -6074 number as "IVR1's Home," and contends that "IVR1's Home" must mean Levins verified and consented to be called on that number. (*See* Opp. at 10–11, 17.) The records belie this assertion.

First, Santander's records show that Levins's -6074 number was *not* verified before being designated as "IVR1's Home." Rather, the notes for the first call involving that number state: "no verifications were required for Faye Levins." (Def.'s Summary Judgment Appendix ("Def.'s SJ App.") 125.) Moreover, the phrase "verifications were performed"—while present on calls to Levins's other numbers (*see*, *e.g. id.* 124)—is absent from *any* entry relating to the -6074 number prior to August 12, 2009, by which point Santander had already called the number 19 times. (Pls.' Statement of Additional Material Facts In Opposition to Summary Judgment ("Pls.' SOF") ¶¶ 6–7.) And Santander's reference to general "procedures" for its agents to verify captured numbers, should be outweighed by the specific evidence that it did not follow those procedures.

Santander's only evidence supporting its inference comes from the deposition of an employee not designated to testify on matters of TCPA compliance or Santander's procedures. (Pls.' SOF ¶ 28.) And that individual in fact testified that there was "no way" from reviewing the activity notes alone that he could "tell how the [initial] conversation [with Levins] went" or whether a verification actually occurred when the "IVR1's home" designation was recorded. *Id.* Indeed, the only conclusive evidence of such a verification would be a notation in Levins's account that "verifications were performed," which is absent from her records.

Thus, Levins shares the "essential characteristics" of the class at large, *see Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006), because she was (1) called by Santander, (2) using the Aspect dialer, (3) on the -6074 number, which (a) she did not provide on a loan

application, (b) Santander's records do not show her to have provided orally or in writing, and (c) she did not verify, prior to being called on that number. She is therefore typical of the Class.

**B.  Santander's Summary Judgment Motion Does Not Alter Levins's Adequacy.**

With respect to Levins's supposed inadequacy, Santander argues that Levins (a) "will be preoccupied defending Santander's Motion for Summary Judgement [sic]," and (b) will have to dispute the meaning or accuracy of Santander's call records, to the detriment of the Class members. (Opp. at 15.) These are perhaps the weakest of Santander's attacks.

As to the former, Levins has already responded to Santander's motion for summary judgment, thus there is nothing to "preoccupy" her going forward. Moreover, the issues raised at summary judgment are not "antagonistic [to the class] or conflicting claims" so as to render her an inadequate representative. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). To the contrary, the arguments in Santander's motion are common to the Class and Subclass members. For instance, Santander sought summary judgment against Levins on the basis that its Aspect dialer is not an ATDS under the TCPA. (Def.'s SJ Mem. at 11.) As established above, however, each Class member will face the same question, and that question will be resolved uniformly for the Class as a whole. (S*ee* Section II.B *supra.*) Likewise, Santander argued that Levins must have verified her -6074 number prior to being called on it, given the existence of the "IVR1's home" designation in its account notes. (Def.'s SOF ¶ 43.) In response, Levins made clear that an "IVR1" designation is not indicative of consent at all, (Pls.' Opp. to Def.'s Mot. for Summary Judgment at 3), an argument that she has in common with *every* Number Trapping Subclass member. (*See* Pl.'s Class Cert. Mem. at 2.) Finally, Santander is wrong when it argues that Levins must impugn the "meaning or 'accuracy' of Santander's records" to prevail on her claims, whereas the Class must rely on their accuracy. Levins has not disputed the accuracy of Santander's account records. She admits that Santander called her at the dates and times its

records indicate, and that every time Santander verified a customer's number, its records stated that verifications were performed. Levins only disputes Santander's self-serving assertion that an "IVR1's home" designation necessarily means that it "verified" the number prior to designating it as such. As explained in Levins's summary judgment briefing and in Section III.A, *supra*, Santander's own records show that it *did not* verify Levins's -6074 number (or any other Class members' numbers) prior to calling it. (*See* Pls'. SOF ¶ 28).[3]

Accordingly, Levins's interests are aligned with those of the absent Class members, and despite Santander's mischaracterizations, her individual claims depend on the accuracy of Santander's records, specifically including its notation of every instance where it verified customers' contact information. The same goes for the other Class members.

## IV. Common Issues Will Predominate as to the Class's and Subclass's Claims.

The predominance "'inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy,' with the purpose being to determine whether a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Johnson*, 2016 WL 25711, at *6 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Santander argues that individualized issues relating to (a) class member identification, and (b) consent will preclude a finding of predominance.[4] Neither argument withstands scrutiny.

---

[3] Santander also questions proposed Class counsel's adequacy, arguing that because proposed Class Counsel represent other clients in individual actions against Santander, they must necessarily have a conflict of interest with the Class. (Opp. at 27 n.7.) The cases Santander points to in support of this proposition, however, are those where "potential class members are at risk that counsel will trade off the interests of certain of its clients to the detriment of other clients." *Kurzci v. Eli Lilly*, 160 F.R.D. 667, 679 (N.D. Ohio 1995). No such conflict exists here, as the individual plaintiffs have the same interest in proving Santander's ATDS use and in proving their claims using Santander's records. As no conflict exists, the adequacy of named plaintiff's counsel presents no barrier to certification either.

[4] Santander also asserts that individualized inquiries into the injuries suffered by the Class members are necessary, and therefore preclude a finding of predominance. (Opp. at 31.) As explained in Section II.A, *supra*, such concerns are misplaced. Each Class member suffered injury in the form of receipt of an unlawful and harassing call. And to the extent Santander argues that individualized inquiries

**A.      Questions Pertaining to Class Membership Do Not Defeat Predominance.**

Santander argues that "individualized determinations necessary to identify *membership* in Levins's putative class" defeat predominance. (Opp. at 28.) But, as Santander states, this is a question of Class membership, not liability. That is, if an individual did consent, she would have done so "orally or in writing," or via verification, as reflected in Santander's records, and would thus be excluded from the Class definition. Such inquiries do not defeat predominance. *See Mullins*, 795 F.3d at 665–66; *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (clarifying that "arguments about whether someone belongs in the classes do not speak to whether common questions predominate *among class members*"). Indeed, whether someone is in the Class "is a different question," from whether the Class's common questions predominate. *Id.*

**B.      Santander Lacks Specific Evidence of Consent to Defeat Predominance.**

From there, Santander argues that the possibility that absent Class members consented to receive the calls renders class treatment inappropriate. Specifically, it asserts the possibility of "consent even in the face of records that do not 'reflect' consent." (Opp. at 30.) Of course, Santander does not even guess at what form such evidence would take.

In any event, Santander can only overcome predominance with "specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone." *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 106-07. And as a debt collector, Santander bears the burden of "demonstrating that the consumer provided prior express consent." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 ¶ 10 (Jan. 4, 2008); *see also Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp.

---

are necessary to determine whether calls to Class members were completed, (Opp. at 31), it ignores the fact that Santander's own records plainly identify whether calls were completed. (*See, e.g.*, Levins Call Logs, Def.'s SJ App. at 092–125; Dialer Code Glossary, attached as Exhibit A to the Declaration of Rafey S. Balabanian (the "Balabanian Decl."), at SCUSA/E 11019–11029.)

2d 898, 905 (N.D. Ill. 2012) (noting that consent is an affirmative defense under the TCPA).

Here, Santander provides no "specific evidence" of consent. Instead, it relies on the generalization that it "routinely obtains [consent] pursuant to its robust TCPA compliance system." (Opp. at 29.) It then hypothesizes that *if* it were to depose each absent class member, some *might* testify that they had agreed to be called. But that is exactly the type of "opposition based on theory, not evidence" that courts in this district have repeatedly found insufficient. *See Johnson*, 2016 WL 25711, at *7–8; *see also Jamison*, 290 F.R.D. at 106–07 ("[I]f the defendants fail to set forth [] specific evidence and instead only make vague assertions about consent, [] individualized issues regarding consent will not predominate over common questions of law or fact."). And as to Santander's argument that it may have obtained consent, but "not recorded [it] in Santander's records," it is well established that a defendant cannot "rely on its own failure to obtain and retain records . . . to defeat class certification." *Johnson*, 2016 WL 25711, at *7 (citing *Mullins*, 795 F. 3d at 668).

As such, Santander's speculation about how it *may* have obtained consent to call some *unknown* portion of the proposed Class and Subclass is deficient as a matter of law.

## C. Individualized Damages Calculations Cannot Defeat Class Certification.

Finally, Santander argues that individualized inquiries as to the willfulness of its conduct, and therefore the Class members' entitlement to treble damages, preclude a finding of predominance. That is mistaken. Courts uniformly find the TCPA's statutory damages regime to favor class certification, by providing a mechanical method of calculating damages. *See Targin Sign Sys., Inc. v. Preferred Chiropractic Center, Ltd.*, 679 F. Supp. 2d 894, 898–99 (N.D. Ill. 2010) (recognizing concerns that individualized damages calculations "would predominate over class members [as] no better than pure fiction—and a pretty poor quality of fiction at that"); *Birchmeier*, 302 F.R.D. at 253 (finding individualized damages calculations in TCPA case to be

"a non-issue in terms of predominance"). Even the sole case cited by Santander in support of its argument confirms that TCPA damages calculations support a finding of predominance. *See Jamison*, 290 F.R.D. at 104 (finding question of "whether the defendants' conduct was knowing or willful" to be a common question). Santander's argument is factually mistaken as well, given its uniform course of conduct, and failure to provide any basis in the record for arguing that its violations were "willful[] or knowing[]" only as to some class members but not others.

Accordingly, Santander's damages concerns fail to negate the predominance of common issues, and the proposed Class and Subclass should be certified.

## V. A Class Action is a Superior Method of Adjudicating the Class's Claims.

Santander also claims that the Class fails Rule 23(b)(3)'s superiority requirement for three reasons: First, that identifying Class members would be unduly burdensome and unmanageable. Second, that individuals are sufficiently incentivized to bring their claims alone. And third, that the aggregated damages available to the proposed Class are excessive and unfair. The law is against Santander on each front.

### A. Issues Identifying Class Members Will Not Render Class Treatment Inferior.

Santander asserts that it will be too difficult to identify Class members, but this argument misunderstands the proposed class definition and controlling law. As the Seventh Circuit recognizes, there is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Mullins*, 795 F.3d at 663 (collecting cases).

Santander starts by arguing that it will be unwieldy to identify which Class members were called using Aspect's "manual" mode as opposed to its "predictive dialer" mode. (Opp. at 22.) As discussed above, the dialing mode used is irrelevant to the Class's claims, as all calls made using the Aspect dialer are actionable. (*See supra* Section II.B.) Santander also argues that it will be unduly burdensome to identify historical cell phone subscribers, as required by the

Class definition. (Opp. at 23–24.) As Courts regularly recognize, however, historical cell phone subscribers *can* be identified, and the effort involved in doing so does not negate the superiority of a class action. *See Birchmeier*, 302 F.R.D. at 248 (pointing to "information kept on file by the various phone companies, which actually does encompass historical subscriber data"); *see also Booth*, 2015 WL 1466247, at *4 (finding identification process manageable where, despite "the limitations of the [defendant's] dialer's call records," the Plaintiffs could "rely on additional records, such as telephone carrier records and reverse-lookup directories, to identify class members and establish elements of the claims").

Likewise, Santander's concerns about reviewing financing documents to determine whether the numbers called were provided there are misplaced. To start, that argument does not even apply to the Subclass of individuals whose cell phone numbers were designated as "IVR" in Santander's records, and necessarily were not already in Santander's possession. (Nerios Dep. Tr., Ex. 9 to Opp., at 37:18–39:14.) Moreover, Santander misunderstands the nature of the class identification inquiry. Santander would not have to review loan documents for every individual called during the Class period; rather, it could apply the remaining class criteria first and end up with a smaller group of loan documents to review.[5] Indeed, Santander has already undertaken such an inquiry, having previously stated that approximately 800,000 of the individuals it called during the relevant time period either (a) were called on cell numbers provided on their credit applications, or (b) had waived their TCPA claims by contract. (Santander Resp. to Pls.' Second Interrogs., Ex. D. to Pl.'s Mot. for Class Cert, No. 15.)[6]

---

[5]  Santander contends that its records can't identify which telephone numbers were cellular when they were called. But Santander's own expert acknowledged the existence of databases allowing for such identification. (*See* Aron Dep. Tr., Balabanian Decl. Ex. B, at 82:1–4; *see also* Aron Exp. Rpt., Ex. 12-C to Opp., ¶ 37).

[6]  The same process would address Santander's concerns about excluding individuals who have agreed to arbitration clauses or have contractually waived their claims. (*See* Opp. at 24.)

Additionally, Santander is estopped from pursuing these arguments now given that it previously made the opposite representations with respect to its ability to identify the Class members from within its records to both this Court, as well as Judge Jesus Bernal of the Central District of California. Indeed, in *Hibler v. Santander*, Santander attempted to settle this Class's claims at a steep discount, and entered into a binding settlement agreement (and later defended it to this Court and to Judge Bernal) stating that it could create a class list of everyone in the country "who received a telephone call from Defendant [Santander] on his or her cellular phone by an automated dialer or prerecorded voice but had not given consent to be contacted at that number (or had revoked consent)." (*Hibler* Settlement Agreement, Ex. N. to Pl.'s Mot. for Class Cert., at 4.) Santander even bound itself to create the class list "and deliver it to the Settlement Administrator within fifteen (15) days of Preliminary Approval." *Id*. It has offered no explanation as to why that is no longer the case or worse, why it misled the courts previously.

In the end, each of Santander's manageability challenges can be disregarded. It has already represented that it can identify individuals called (a) on their cell phones, (b) using its dialer, (c) without consent, and that it can do so in 15 days or less. Accordingly, there is simply no reason for this Court to employ the "last resort" of "refusing to certify on manageability grounds alone." *Mullins*, 795 F.3d at 664.

**B.** **Superiority Does Not Hinge Upon the Incentive to Bring Individual Claims.**

Santander next argues that a class action is an inferior method for resolving the Class's claims because the TCPA provides a sufficient incentive for individual litigation, as shown by Plaintiff's counsel representing individual litigants in arbitrations and cases against Santander. (Opp. at 26–27.) As explained in Plaintiff's opening brief, Courts throughout the country have recognized that while the "TCPA [has] built-in incentives for aggrieved plaintiffs to litigate individually—such as the opportunity to collect statutory damages . . . it does not follow that

such claims are inappropriate for class treatment." *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 690 (S.D. Fla. 2013). Moreover, even if the majority of Class members did have an incentive to litigate individually, "it [would] not mean that the claims cannot be bound together in a class action, in which each plaintiff still would be entitled to his individual statutory damages." *Birchmeier*, 302 F.R.D. at 255. Rather, "[i]n this case, plaintiffs have alleged that defendant[] chose to violate the TCPA on a very large scale by targeting a million or more people with inappropriate calls. Individual litigation of the claims of each individual would not be a superior or efficient way to resolve the claims." *Id.* Nor would individual suits (by those who chose to file them) "deter large commercial entities as effectively as aggregate class actions." *Manno*, 289 F.R.D. at 690.

Santander's two cases to the contrary are distinguishable. In *Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 238 (S.D. Ill. 2011), the court found that a class action would not offer efficiencies of time and scale, but only "because of the numerous individual questions that would need to be answered to reach a fair and just result on the issue of liability." *See also Forman v. Data Transfer, Inc.*, 165 F.R.D. 400, 405 (E.D. Pa. 1995). Here, as described above, no such individualized liability determinations are needed, and proceeding on a class basis would therefore be more efficient.

Ultimately, while "Congress contemplated that TCPA claims *could* be brought as small-claims court actions . . . 'Congress did not make a clear expression of an intent to preclude application of Fed. R. Civ. P. 23 to the TCPA, and the Court [should] not read one into the statute.'" *Johnson*, 2016 WL 25711, at *8 (quoting *Green v. Service Master on Location Servs. Corp.*, No. 07-cv-4705, 2009 WL 1810769, at *3 (N.D. Ill. June 22, 2009)).

### C.     Proportionality Is Not a Bar to Class Certification.

Finally, Santander argues that superiority should be denied because the harm it caused the

Class is out of proportion to the amount of damage that Santander will suffer. This argument has no merit, and indeed, has been expressly rejected. In *Murray v. GMAC Mortg. Corp.*, the Seventh Circuit vacated the district court's holding that the class should not be certified because of the defendant's "potential liability in the billions of dollars." 434 F.3d 948, 953 (7th Cir. 2006). Admonishing the court below, the Seventh Circuit held "the reason that damages can be substantial [] does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person," as well as the defendant's disregard for the law. *Id*. Santander's concerns about the "material disruption of Santander's business," therefore, are of no relevance to the superiority of the class actioni device in this case. (*See* Opp. at 22.)[7]

## CONCLUSION

For the reasons described above and in Plaintiff's opening motion, Plaintiff requests that the Court grant her motion for class certification in its entirety.

Respectfully submitted,

**FAYE LEVINS**, individually and on behalf of all others similarly situated,

Dated: August 12, 2016                  By: s/ Rafey S. Balabanian
                                              One of Plaintiff's Attorneys

---

[7]      In a footnote, Santander challenges numerosity, arguing that Plaintiff's estimations of the size of the proposed Class and Subclass fail to establish "by a preponderance of the evidence" that more than 40 individuals fit the proposed definitions. (Opp. at 27 n.8.) Santander fails to mention that the reason Plaintiff is unable to state the exact class size is because Santander refused to respond to numerosity-related discovery requests on the basis that it "ha[d] not challenged numerosity." (*See Espejo* dkt. 117 at 11.) In any event, the weight of the evidence makes clear that more than 40 individuals fit each definition: Santander made debt-collection calls to approximately 5 million individuals using its dialers during the relevant time period, (Opp. at 1); at least 3 million of those were Santander customers, (Santander Resp. to Pls.' Second Interrogs., Ex. D. to Pl.'s Mot. for Class Cert, No. 15); at least 2.2 million of those (a) were called on numbers not provided on financing documents, and (b) had not waived their claims by contract, (*id.*). Given that Santander has produced *no evidence* to challenge numerosity and refused discovery on the basis that it did not challenge numerosity, the Court can make the "common-sense-assumption[]," that out of that group of 2.2 million, at least 40 were called on numbers prior to verifying them. *See McCabe v. Crawford & Co.*, 210 F.R.D. 631, 644 (N.D. Ill. 2002); *Abdeljalil*, 306 F.R.D. 308 (S.D. Cal. 2015) (inferring numerosity where 340 million customers were called, despite only 2% having been called on an autodialer).

Rafey S. Balabanian
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.234.5342
Fax: 415.373.9435

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2016, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

s/ Rafey S. Balabanian